James O. Shackelford, J.,
delivered the opinion of the Court.
This suit is an issue of devisavit vet non, made in the Circuit Court of Williamson County, to try the validity of a paper writing, purporting to be the last Will of Patrick Reese, deceased. The cause was submitted to a jury at the July Term, 1867, of the court, and resulted in a verdict for the contestants. A new trial was moved for; the motion overruled, and an appeal in error, taken to this Court.
The facts necessary to be stated to understand the principles involved, are as follows:
On the — day of September, 1865, the testator, Patrick Reese, was shot at night by some unknown person; several wounds were inflicted upon him, from the effect of which, he lingered until the — day of December, 1865, when he died. On the 19th of October, after he was shot, he made and executed the paper writing in controversy. He was possessed of considerable real and personal estate. He left a widow, but no children. The contestants are his nearest relations; his nephews and nieces. The one half of his personal property was given to his wife, and the balance, both real and personal estate, was given to the children of Henry -North, who was the brother of his first wife,' *24 with the exception of some small legacies for the benefit of his servants.
The testimony relative to the sanity of the testator is conflicting. The witnesses for the proponents of the Will, testify to the capacity of the deceased to make a Will. There is testimony to show that his mind was affected by his wounds, and that he was insane; also, that he had lucid intervals. The subscribing witnesses testifiy that he was sane at the execution of the paper purporting to be his Will. The witnesses on the part of the contestants, state he became insane in consequence of the wounds inflicted, and, that he was not of sound and disposing mind and memory, at the time of the execution of the paper. The errors assigned, involve questions of practice and law, and we shall notice them as they arise in the record. First, On the trial of the cause the proponents of the Will introduced the subscribing witnesses to the paper presented in the issue, and offered to examine them as to the execution, attestation and publication of, and the capacity of the testator; and to reserve their other testimony in regard to his capacity, until the contestants had introduced and closed their proof, and then introduce the same as rebutting evidence.
The Court ruled: "If the contest was as to the capacity of the party, the proponents of the Will must introduce all their testimony upon that question, as evidence in chief, but if the contestants should introduce evidence of undue influence, they would then have the right to introduce rebutting proof upon that question;” to which they excepted, and the trial was had under the rulings of the Court; and in this, we think, the Court erred.
*25 The usual and proper practice, in such cases, in our courts, is: the proponents of the Will first introduce the subscribing witnesses, and prove its due execution. The witnesses are usually asked the question of its due execution, and whether they regarded the testator of a sound and disposing mind and memory, at its execution. The affirmative answer to this general question, is all that is expected in the first instance. When the validity of the Will is contested upon the ground of the want of mental capacity, the presumption is against the parties alleging the fact of the want of mental capacity. They go forward with their testimony, and having closed their proof, the rebutting testimony of the proponents of the Will is then introduced.
It is not necessary, in the examination of the witnesses as to the due execution and attestation of the Will, that they should be examined as to the sanity of the testator. The party contesting the validity of the Will may cross-examine the witnesses as to this point, as he is not obliged to wait until he puts his side of the case, and then recall the witnesses. The general burden of the issue of devisavit vel non, is upon the party claiming under the Will; but, upon any allegation of want of capacity in a testator, it is upon the contestant. The party propounding the Will has the right to open and close the case. Such is, and has been, the usual practice of the Circuit Courts of this State, and' is the same in most of the States: Redfield on Wills, pp. 40 and 41; 8 Connnecticut Rep., 254; 4 Massachusetts, 259; 7 Pickering, 94.
*26 Secondly, On the trial of the cause, the party propounding the Will, after an examination of the witness, who had frequently seen the testator, and had conversations with him, before, and about the the time of the making of the Will, was asked the question, in view of all that he had stated: ‘Whether the testator was, at the time of making the Will, of sound and disposing mind and memory?”
The question was objected to, and the objection sustained by the Court.
Since the decision of Gibson vs. Gibson, 9 Yer., 329, this has no longer been an open question in this State. Attesting witnesses, and they only, are trusted to give their opinions, merely, without cause, or reason assigned, of a testator’s sanity. Physicians may state their opinions of a testator’s mind, but they must give the symptoms or circumstances, from which they draw their conclusions. As to all others, their opinions,- not based on facts or circumstances testified to, are not evidence.
The rule is, a witness having stated the appearance, conduct, and conversations of the testator, or other facts from which he may draw his conclusions, is at liberty to state his opinions as the result of the facts upon his mind, as to the condition of the testator’s mind: 1 Iredell, 83; 4 Con., 203; 7 Gill’s Rep., 10; 17 Verm., 502.
We are, therefore, of opinion that the Court erred in sustaining the objection to that question.
Thirdly, On the trial, the contestants offered to read the deposition of Dr. Core, to which the adverse party objected, upon the ground that he was under subpoena, *27 and present, and ought to be examined: but the Judge overruled the objection, and permitted the deposition to be read.
In this, we think the Court erred.
It appears, from this record, the witness was a resident of the County of Williamson, in which the action is pending, and his deposition had been taken under the provisions of sec. 3837, of the Code. His deposition had been taken in the county, by the contestants. He had been subpoenaed to attend by the opposite party, and was in attendance as a witness.
By provisions of the section of the Code, where the deposition of a witness, living in the county, has been taken, the adverse pa/rty having summoned him, if he is present, the party who took his testimony, cannot read the deposition. He must, if he desires the testimony, examine him. It seems to have been held otherwise, but we think this the correct practice.
This rule does not apply where the witness resides in another county. In that case, the adverse party may summon him, if he wants him examined in court; but it does not preclude the reading of the deposition by the party who took it — it simply enables the party who summoned him, to examine him, if he chooses: History of a Lawsuit, sec. 314, and 11 Hum., 89.
Fourthly, Many exceptions have been taken to the charge of the Court. '"We think it did not present the law applicable to the case, to the jury.
The testimony discloses the testator was, at times, before the execution of the "Will, insane.
The Court instructed the jury, among other matters, *28 “That it is not the strength or weakness of the mind you are to determine, but, whatever mind he did have, was it sound? Not a diseased, or deluded mind. Was he insane, totally or partially? Although he may have been sane in many respects, even apparently to contract, or do ordinary business, yet, if partially, or totally insane, or deranged, as it is termed, on certain other subjects, this in law, would be what is termed, an unsound mind.”
This part of His Honor’s charge is manifestly erroneous.
A person may be insane upon some subjects, yet sane upon all other subjects; such a one is not incompetent to execute a valid Will, if it is not the offspring of the morbid delusion, under which he is laboring. Partial insanity, will be sufficient to defeat a Will, if the act can be traced to the cause in which the mind is diseased, although the person, at the time of making the Will, was sane in other respects, upon ordinary subjects: Jarman on Wills, p. 59; Redfield on Wills, 69 and 70; 3 Hump., 278.
His Honor, in his instructions, wholly failed to draw these distinctions, and the effect of the charge upon the jury, was, that if the testator was of unsound mind, he could not make a Will. The presumption of law is, after insanity is once shown to exist, it continues, unless it be the effect of delirium; so that the party who alleges a lucid interval, assumes the burden of proof; but no particular measure of proof is required to establish the existence of such a state of mind, but it must be sufficient to overcome the presumption that naturally arises *29 in the mind, after the person has been shown to have been insane: Redfield on Wills, 113; 2 Ire. Law, 24; 7 Pick., 94; 4 Metcalf, 547; 1 Phillimore, 100.
The charge of His Honor, is altogether silent on this important branch of the case. He did not explain to the jury, which it was his duty to do, that though the testator may have been insane before the making of the Will, yet, if there was a lucid interval, and the testator became of sound and disposing mind and memory and the Will was executed during that interval, it would^ be a valid Will. The-jury are left, by the charge of the Court, to draw their own conclusions, upon the important and intricate questions of law applicable to the case.
We deem it not important to comment further on the charge, but are compelled to reverse the judgment, and remand the cause for a new trial.