## NELS P. PETERSON v. WILLIAM TONER.

*Malicious prosecution—Malice—Evidence—Damages.*

1. In an action for malicious prosecution the plaintiff offered to show the circumstances of a difficulty that occurred between the parties three years before the trial, and the court excluded all evidence upon the subject, except of certain threats made by the defendant against the plaintiff, and the ruling is sustained under *Dillon v. People,* 8 Mich. 366; *Wellar v. People,* 30 Id. 22; *Patterson v. Garlock,* 39 Id. 449.

2. The defense in a case for malicious prosecution cannot be made out by proof that the prosecuting attorney acted in good faith in authorizing the prosecution.

3. Advice by a prosecuting attorney, based upon false statements of the defendant, is no defense in a suit for malicious prosecution.

4. The omission of the trial judge to charge the jury upon a point to which his attention is not called cannot be assigned as error in a civil suit; citing *Rankin v. West,* 25 Mich. 195.

5. Act No. 101, Laws of 1885, authorizing the assignment of errors on the charge of the court without exceptions to support them, does not cover an omission or refusal to charge.

6. Where the evidence in a suit for assault and battery and malicious prosecution showed that the defendant assaulted the plaintiff, who was a carpenter by trade, with an axe, and broke his wrist, and that he was laid up for three months, for which the jury awarded him $100, and that plaintiff lay in jail 10 days under the charge of the defendant, which the jury found was malicious, for which they awarded him $70, such amounts, though large, cannot be said to have been awarded *entirely* without evidence.

Error to Muskegon. (Dickerman, J.) Argued April 18, 1890. Decided April 25, 1890.

Case for assault and battery and malicious prosecution. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Bunker & Carpenter,* for appellant.

*Chamberlain & Sessions,* for plaintiff.

[The points of counsel are stated in the opinion.—
REPORTER.]

CAHILL, J.  The plaintiff sued defendant in the Mus-
kegon circuit court, in an action on the case for assault
and battery and malicious prosecution, and recovered a
judgment before a jury for $100 on the former charge,
and $70 on the latter.

The parties were neighboring farmers, living in the
township of Dalton, in Muskegon county.  They had not
been good friends, but had had difficulty on different
occasions, running back over a period of three years and
over.  On Sunday, November 18, 1888, the plaintiff
started to cross defendant's premises, entering them from
the highway through a gate, which he left open.  He
passed along the road leading to the defendant's house
and barn to within a short distance of a small gate,
through a fence enclosing defendant's house.  Defendant
saw him, and came out of the gate with an axe in his
hand, and ordered him to go back and shut the gate.
The parties disagree as to whether the defendant raised
the axe, or came at the plaintiff in an attitude of strik-
ing him with it.  The plaintiff testified:

"When I was six or seven rods from Toner's house,
I saw him come out of a small gate, and there was an
axe on the gate-post.  He came within three or four rods
of me, jumping, holding the axe up in his hands, and
said, 'Get out of here.'"

The defendant denies that he raised the axe, but does
not satisfactorily explain why he took it with him.
While the defendant was yet some feet, and perhaps
rods, from the plaintiff, the latter drew a revolver,
and fired it.  He says:

"It was pointed towards Toner. I shot to scare him. I did not intend to hit him."

After the shot was fired, plaintiff started across a plowed field, towards a fence, carrying his pistol in his hand. Defendant also went across the field, endeavoring to intercept the plaintiff, still carrying the axe in his hand. After they reached the fence the testimony is conflicting as to what occurred. The plaintiff testified:

"After I fired the revolver I ran backwards six or seven rods or more, and jumped on the outside of the fence. Toner ran too, and jumped over the fence, and struck me on the head with the axe, four or five times on the wrist and arm. He broke some bones of the wrist."

The defendant denies this, and testified that he did not strike the plaintiff at all. The next day after this occurrence, the defendant went to the prosecuting attorney, and made a statement to him, upon which the prosecuting attorney ordered a complaint to be made against the plaintiff before a justice of the peace, charging him with an assault. The complaint was made, a warrant issued, plaintiff arrested, and brought up for trial before a jury. After the jury were sworn, and a witness was called and sworn, his counsel objected to any testimony on the ground that the justice had no jurisdiction to try the plaintiff on that charge. The justice sustained the objection, and the jury thereupon rendered a verdict of not guilty, and the plaintiff was discharged. It is for this prosecution that this action is brought in part. There are 31 errors assigned but they can all be passed upon under a few headings.

When the justice's docket was offered in evidence for the purpose of showing the criminal prosecution of the plaintiff, it was objected to on the ground of a variance between the declaration and the proof offered. It was

claimed that the declaration alleged a trial on the merits, and consideration of the testimony by the jury, and an acquittal on the merits, whereas it was claimed the docket showed that no evidence was introduced, and that the prisoner was discharged by the justice on his ruling that he had no jurisdiction. The declaration on this point is as follows:

"And the said defendant, under and by virtue of said warrant, afterwards, to wit, on the 19th day of November, A. D. 1888, maliciously, wrongfully, and unjustly caused this deponent and procured him, said plaintiff, to be arrested of his body, and to be imprisoned, kept, and detained in prison for a long space of time, to wit, for the space of ten days, and until the said William Toner, afterwards, to wit, on the 30th day of November, A. D. 1888, falsely and maliciously caused and procured this plaintiff to be carried and brought in custody before the said Lewis M. Miller, and to be tried by a jury duly impaneled in the court of said justice, Lewis M. Miller; which said jury, having heard and considered the evidence against this plaintiff touching and concerning the said supposed offense, then and there, to wit, on the 30th day of November, A. D. 1888, adjudged and determined that this plaintiff was not guilty of the said supposed offense, and then and there rendered a verdict of not guilty; and then and there the said justice caused this deponent to be discharged out of custody, fully acquitted and discharged of the said supposed offense."

The docket entries showing the result of this prosecution are as follows:

"That jury was then sworn to try said cause, and I proceeded to try said cause. William Toner was sworn as a witness for the prosecution. Counsel for defendant objected to the admission of any evidence in the case, because the justice has no jurisdiction to try the offense charged in the warrant. Objection sustained, and the jury thereupon rendered a verdict of not guilty, and I discharged the defendant."

The part of the declaration, above quoted, which is

80 MICH.—23.

not mere recital, is so much as alleged that the plaintiff was acquitted by the verdict of the jury, and discharged out of custody, fully acquitted of said offense. There was no variance between the pleading and the proof to this extent; the proof showed substantially what was alleged in the declaration.

The assignments Nos. 2, 3, 4, 6, 7, and 8 all relate to the admission of testimony concerning former trouble between the parties for the purpose of showing malice in making the assault. It is conceded that a fact occurring at or about the time of the assault complained of, having a tendency to show malice, would be admissible, but it is objected that the plaintiff was allowed to put in testimony of acts occurring three or four years prior to that time, and that such proof could not have had a legitimate tendency to show malice at the time it was claimed that the assault was committed which gave rise to this action. As we read the record, there were two classes of proof offered on this subject. First, the plaintiff offered to show by the witness Staples the circumstances of a difficulty that occurred between the parties three years before. Upon objection of defendant's counsel, the court excluded all evidence upon this subject, except of certain threats made by the defendant against the plaintiff. The defendant had no cause to complain of this ruling. The circumstance inquired about was not more remote than has been allowed to be shown under former rulings of this Court. *Dillin v. People,* 8 Mich. 366; *Wellar v. People,* 30 Id. 22; *Patterson v. Garlock,* 39 Id. 449.

It was not error to permit the plaintiff to cross-examine the defendant fully in regard to his former relations with the plaintiff.

Defendant complains that the court refused to allow him to ask the prosecuting attorney the following question:

"I will ask you, on the facts as told to you before the complaint was made or directed, whether you was satisfied in your mind that there were good grounds for ordering the complaint to be made."

This question was not proper. The defense could not be made out by proof that the prosecuting attorney acted in good faith in authorizing the prosecution. It must depend upon the defendant's good faith, and the testimony offered did not tend to prove that.

The court charged the jury, at the request of the plaintiff, as follows:

"This action is founded upon certain occurrences taking place at or about the time alleged in plaintiff's declaration. Those occurrences have been detailed to you on the one hand by Peterson, the plaintiff, and on the other hand by defendant, Toner, Henry Valley, produced by the defendant, and also, so far as she saw them, by Mrs. Valley. The right of plaintiff to recover here depends upon which of the two versions of that transaction is the true one, viz., that told by plaintiff, Peterson, or that told by defendant, Toner, and his witnesses."

Upon this the tenth and eleventh assignments of error are based. Counsel for defendant concede that this would have been correct if confined to the count for assault and battery, but say it was not so confined, and that the jury were by this instructed that they might bring in a verdict on both counts. We do not so understand the request. It refers expressly to the occurrences detailed to them by Peterson, Toner, Henry Valley, and by Mrs. Valley. Those were the occurrences connected with the assault and battery. Neither Valley nor Mrs. Valley testified to anything concerning the malicious prosecution, and the jury had no right to understand the court to be referring to the plaintiff's story about his arrest and prosecution.

The 12th, 13th, 19th, 20th, and 26th assignments of error relate to the charge of the court and the refusal to

charge upon the subject of the defendant's justification upon the charge of malicious prosecution by the advice of the prosecuting attorney. Upon this point counsel requested the court to charge the jury as follows:

"If you find that defendant fully and fairly disclosed to the prosecuting attorney all the matters within his knowledge which he was bound as a man of ordinary intelligence to suppose would tend to cause or exclude a belief of the plaintiff's guilt of the offense of assault with which he was charged, then your verdict on the charge of malicious prosecution must be in favor of the defendant."

This the court declined to do, but charged the jury as follows:

"Now, as opposed to what the plaintiff is required to show upon that branch of the case, it is claimed that the defendant here went to the prosecuting attorney, and stated the case to him, and acted upon his counsel and advice. If you are satisfied, from any evidence in the case, that he did, and that he stated fairly all the material facts in the case, and did so honestly and in good faith, and that the prosecuting attorney advised him to commence this prosecution, and he acted under his advice, that would be a defense."

It is urged that this instruction made it necessary for the defendant, who was unlearned in the law, to decide, at his peril, what facts it was material for him to disclose to the prosecuting attorney; whereas, the law only required him to disclose such facts as a man of ordinary intelligence was bound to know were material. As an abstract proposition, this has considerable weight. But, as applied to this case, it has no force. The defendant was a party to the occurrence of November 18, 1888. He knew every fact connected with it. There was no chance for him to be mistaken about the facts, nor as to which of them were material. He has told his story in this case, which, we must presume, was the same story told the prosecuting attorney. If the plaintiff told the

truth about what occurred between these parties, the defendant's story was false, and what he told the prosecuting attorney was false. He had not only come out at the plaintiff in a threatening manner with an axe, but when the plaintiff tried to escape from him by running across the field to the highway he followed. The defendant testified on this point as follows:

"I hollered to him three times to go back and shut the gate before I picked up the axe. The axe was just outside the gate. I picked the axe up just outside the small gate. The time I told him the third time, I was outside the gate. I had the axe. I had left it there where I had it splitting wood with it. I was not starting towards him. I was starting south,—kittering across the field to head him off. I had told him the third time to go back and shut the gate before I got to the small gate. I picked up the axe after that, just as soon as I got out of the gate. He didn't start to cross the field until he shot at me. He had not started before I got out of the gate. I was outside of the gate. When he saw me pick the axe up he shot at me. I didn't go down the road at all, but started across the field. I didn't run. I walked pretty quick. I am getting pretty stiff now. I heard Valley testify that I run. He might call it running; I didn't. I went as fast as I could to turn him back. I was bound to make him shut the gate. I wanted the axe for my protection."

The jury must have found that the plaintiff's story, corroborated, as it was, to some extent by the defendant, was true. If it was true, then there was no probable cause for the prosecution which defendant commenced against the plaintiff, and the story he told the prosecuting attorney was willfully false, and the advice based upon it was no defense.

Complaint is made that the court did not charge the jury as to the meaning of "probable cause," and as to the application of the law to the facts on that point. It does not appear that defendant's counsel requested any charge on this subject, nor that the attention of the

court was in any manner called to this neglect, if it was neglect. The omission of a trial judge to charge the jury upon a point to which his attention is not called cannot, in a civil case, be assigned as error. *Rankin v. West*, 25 Mich. 195. No exception was taken to this omission of the circuit judge. The statute of 1885 (Laws of 1885, p. 104) does not cover an omission or refusal to charge.

Complaint is made that the court refused to give the defendant's thirteenth request, as follows:

"Even if the defendant did commit an assault on the plaintiff after the latter discharged his revolver, that fact could not affect the plaintiff's guilt on the charge of assault or defendant's right or justification in making the complaint, nor can it be considered by you in arriving at your verdict on the claim of malicious prosecution."

The court carefully discriminated in his charge between the defendant's guilt under the count for assault and battery and the count for malicious prosecution. The jury were charged as to what they must find in order to justify them in finding a verdict for assault and battery. The trial judge concluded what he had to say on that subject by the statement:

"Now, that is one part of the case. The other is for malicious prosecution."

Then followed a statement of the law applicable to that branch of the case. We think the jury were made to understand that, in determining whether defendant had probable cause for making the complaint, they could not consider what took place after the plaintiff fired his revolver. The refusal to give this specific request, was, under these circumstances, not error.

The last point relied on relates to the question of damages. It is said that the plaintiff gave no testimony from which the jury could estimate his damages. The plaintiff testified that the defendant assaulted him with an axe,

and broke his wrist.    For this the jury gave him $100.
He testified that he lay in jail 10 days under the defend-
ant's charge, which the jury finds was malicious.    For
this the jury awarded him $70.    Large as these amounts
are, we do not think the jury acted entirely without evi-
dence in arriving at the result.

The judgment must be affirmed, with costs.

The other Justices concurred.