## Marshall v. Glover.

(Decided November 16, 1920.)

### Appeal from Fulton Circuit Court.

1. Assault and Battery—Provocation—Mitigation ·of Damages.— Under section 73a of the Kentucky Statutes ·the defendant in an assault and battery case may plead as a defense to the claim for punitive damages, provocation preceding the assault and battery.

2. Assault and Battery—Provocation—Sufficiency of.—Under this statute the provocation that caused the defendant in an assault and battery suit to bring on the difficulty may arise out of recent abuse or misbehavior by the plaintiff towards the defendant or some member of his family.

3. Assault and Battery—Threats—Competency of.—It is admissible for the defendant in an assault and battery suit where self defense is pleaded to introduce evidence of previous threats made by the plaintiff against him.

4. Assault and Battery—Threats—When Party May Testify as to.— It is competent for the defendant in an assault and battery case to testify that threats were communicated to him before the difficulty and to give the names of the persons who furnished the information, but if he wants to prove the nature of the threats he must introduce the witnesses to whom the threats were made and who communicated them to him and should not be permitted to relate what these witnesses told him unless he shows they are dead or their evidence cannot be procured.

5. Assault and Battery—Character of Plaintiff.—In an assault and battery suit it is admissible for the defendant to show the violent, quarrelsome character of the plaintiff.

HESTER & HESTER for appellant.

W. J. WEBB, W. B. AMBERG and C. N. LANNON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

The appellant, Marshall, brought this suit to recover damages growing out of his alleged unlawful, willful and malicious shooting and wounding by the appellee Glover. On a trial of the case the jury returned a verdict for Glover and Marshall appeals.

In his answer Glover, after traversing the averments of the petition, set up that: "At the time and place, and on the occasion mentioned and set out in the petition, the plaintiff unlawfully threatened and assaulted the defendant by advancing on him with threatening words

and manner and attempted a personal attack upon him, and the defendant was in danger of suffering bodily harm at the hands of the plaintiff, and that he in good faith believed, and had reasonable grounds to believe, that he was then and there in danger of bodily harm being inflicted upon him by the plaintiff, and that in his own necessary self-defense, and to protect himself from said danger, he shot the plaintiff; but in doing so he did no more or used no more force than was necessary or appeared to him in the exercise of a reasonable judgment to be necessary to protect himself from said injury at the hands of the plaintiff, and this is the shooting and wounding of which complaint is made in the petition, and what he did on said occasion was in his own necessary self-defense, upon which he pleads and relies herein.''

And further pleaded that ''a few days before the shooting mentioned in the petition the plaintiff had come upon the defendant's premises and cursed and abused the defendant's child, and when defendant met him on the said occasion he inquired of plaintiff why he had abused his child, whereupon the plaintiff, as alleged in his original answer, threatened and assaulted him in the manner therein set out.''

On a trial of the case Glover testified that the personal relations between himself and Marshall had been unfriendly for some years; that he had forbidden Marshall to go on his premises or farm; that the day before the shooting he was told by his son Newman that Marshall shortly before this had come on his farm to look for hogs and while there had cursed and abused his son Newman and made insulting remarks about himself; that the day after he received this information from his son he met Marshall on the street in Union City, Tennessee, and asked him what he meant by cursing his son.

He then related what took place as follows: ''He (Marshall) said: 'Come back in this alley and we will settle this now,' and he started toward me and I pulled the pistol out and I said, 'Dick, don't come any further or I will shoot you,' and I started to put it back in my pocket and he started toward me again and I shot. I didn't hit him; didn't want to, and when I did that he had his hand in his pocket and pulled it out and he kept coming on me and I was retreating and I shot him then and he stopped the instant I shot. . . . I had re-

treated back up north, I don't know just how far, but I was anywhere from ten to twenty-five feet north of where I was when I started."

He also testified that when he shot Marshall he was advancing on him in a violent and threatening manner and he believed it was necessary that he should shoot him to protect his own life.

And further introduced evidence to show that Marshall was a large, vigorous, dangerous and quarrelsome man, and it appears without contradiction that Glover was delicate and crippled.

He was also asked concerning threats that had been made against him by Marshall before the shooting and testified that Wright, Frazier and Rogers had told him that Marshall had said to each of them in a violent way that if ever he crossed his path he would beat him to death.

Newman, the son of Glover, testified that a·few days before the shooting Marshall came over to their farm looking for some hogs, and after going about the place and not finding them went out in the road, but immediately returned into the field and advanced on him in a threatening and offensive manner, making at the same time threats as to what he would do to his father if he was there. He also said that when he first saw his father after this he told him what Marshall had said and the violent manner in which he had acted.

Wright was introduced as a witness and testified to the threats made by Marshall against Glover and that he had communicated these threats to Glover before the shooting, but neither Frazier nor Rogers was introduced as a witness, and the only evidence as to the alleged threats made in their hearing by·Marshall was given by Glover, who related what they had told him.

At this point it should be said that counsel for Marshall objected to the introduction of evidence showing the violent, dangerous and quarrelsome habits and disposition of Marshall and to the evidence given by Glover as to the threats made against him by Marshall.

Marshall, testifying in his own behalf, admitted the unfriendly and hostile relations existing between himself and Glover, but was not inquired about nor did he testify concerning the threats against Glover testified to by Wright or those related by Glover as coming from Frazier and Rogers. Although it should be said that in

answer to the question whether he had made any threats against Glover at the time he was shot he said: "I never made any threats at him or about him or to him in my life." He also denied that he had threatened, cursed or abused the son of Glover, further saying that the boy had without cause cursed and abused him.

In relating the circumstances of the shooting he said: "I saw him on the outside of the walk and sorter walking along north, and when he saw me he stepped out to the side of the walk. I paid no attention to it; I didn't think of any trouble, but when I come even with him going south he turned around and said: 'What in the hell is this you were saying to Newman, my boy,' and at the same time he commenced fumbling a gun; of course I could see the gun, and I said I didn't say anything to your boy to amount to anything and certainly nothing to bring any trouble over, and he said you are a liar or damned liar or God damned liar, I don't know which, and I said: 'Jimmie, let's don't have any trouble, this isn't anything to have trouble over; let's go away and settle it some other time; and he said: 'You damned —— we will settle it now,' and all this time I was seeking a way to get away from him.

"I was angling around to get out of his way. I saw he was going to pull his gun—he was at that time trying to get his gun out. I was probably two steps from him, angling around trying to save myself and get out of his way. I was trying to get down there and get in that hardware store, and at that moment he fired; he held the gun straight and never varied it down or up and fired." He further testified that he did not follow up Glover or advance on him in a threatening, violent or offensive manner or at all.

It should be further said that the statements of Marshall and Glover as to what transpired at the time of the shooting were corroborated by witnesses introduced for them respectively.

From this brief account of the evidence it will be seen that according to the theory of Marshall the shooting by Glover was entirely unprovoked, while according to Glover's theory he shot Marshall in his necessary self-defense.

It is also clear that there was sufficient evidence to have sustained a verdict for either party, and so there is no ground for the assertion that the verdict was

flagrantly or at all against the evidence. The law of the case having been submitted correctly it was simply a question with the jury which set of witnesses they would give the most weight to and they decided in favor of Glover and his witnesses.

In section 73a of the Kentucky Statutes it is provided that: "In all civil actions for damages inflicted by an assault, or by an assault and battery, the defendant shall have the right to plead as a defense to the claim for punitive damages, and to introduce in evidence in mitigation of damages, any matter of provocation which preceded the assault or assault and battery. If the matter of provocation prompted the assault or assault and battery, and was of a nature as to cause a person of ordinary prudence and judgment to take the action taken by the defendant."

It was under the authority of this statute, the pleading of Glover setting up the provocation caused by the abuse of his son and the evidence introduced in support of this pleading that the court in the course of the instructions told the jury that if they believed from the evidence "that plaintiff gave to the defendant such provocation to assault and shoot plaintiff as would cause an ordinarily prudent man under like or similar circumstances to assault and shoot the plaintiff, and that such provocation, if any, did prompt defendant to assault and shoot plaintiff, you may consider such provocation, if any, in mitigation of the punitive damages, if any, which you may find for the plaintiff."

And we think the information that Glover received from his son as to the manner in which Marshall behaved at the time he met his son in the field was sufficient to authorize, under the statute, the instruction the court gave. Renfro v. Barlow, 131 Ky. 312.

The scope of this statute should not be limited to provocation given directly to the defendant preceding the assault or assault and battery. It is broad enough to cover provocation caused the defendant by abuse or gross behavior towards members of his family. The purpose of the statute was, as said in the Renfro case, to change the old rule that excluded evidence of provocation occuring prior to the assault and battery complained of, and it is not to be doubted that the provocation contemplated by the statute would surely be given by an assault upon or abuse of a man's child.

So that when the assault and battery is induced by previous provocation growing out of abuse of or misbehavior toward the defendant himself or a member of his family, and it is of such a nature as to cause a person of ordinary prudence and judgment to resent it, it may be pleaded under the statute in mitigation of punitive damages.

In this case, however, although the evidence authorized the instruction, it cannot be said that the provocation that immediately resulted in the shooting was caused by what Marshall said to the son of Glover, because, according to the testimony of Glover and his witnesses, he was influenced to shoot Marshall on account of the threatening and violent manner in which he was approached by Marshall after he had inquired of him concerning the quarrel with his son. It was therefore proper for the court to instruct the jury as it did that Glover had the right to shoot Marshall in his self-defense unless they believed Glover brought on the difficulty by the use of such acts or language as were reasonably calculated to provoke an assault on himself by Marshall, and also to give the instruction permitting the jury to consider, in mitigation of damages, the provocation caused by what occurred between Marshall and the son of Glover.

It is complained by counsel for Marshall that the court committed error in admitting evidence that Marshall was a violent, turbulent, quarrelsome man, but evidence that the plaintiff possesses these traits of character is always admissible in actions for assault and battery where the defendant justifies on the ground of self-defense. Davenport v. Silva, 265 Mo. 543, 1916a L. R. A. 1240 and note; Payne v. Com., 1 Met. 370; State v. Feeley, 194 Mo. 300, 3 L. R. A., U. S. 351 and note.

It is further insisted that prejudicial error was committed against Marshall by permitting Glover to testify as to threats by Marshall against him some months before the difficulty took place. It will be recalled that Glover, over the objection of counsel for Marshall, was permitted to testify as to threats made by Marshall against him to Wright, Frazier and Rogers although Frazier and Rogers were not introduced as witnesses.

It has been frequently held competent in criminal and assault and battery cases where the homicide or assault and battery is justified on the ground of self-defense for the defendant to introduce evidence of previous

threats made against him by the plaintiff for the purpose of illustrating who commenced the difficulty leading to the homicide or assault and battery, and to show his state of mind when and immediately before the homicide or assault and battery took place and the apprehension he entertained that the plaintiff would, in fulfillment of his threats, do him some violence.

Illustrative cases on this subject are: Rochester v. Anderson, 1 Bibb 428; Waters v. Brown, 3 A. K. M. 558; Cornelius v. Com., 15 B. M. 539; Miller v. Com., 89 Ky. 653; Hart v. Com., 85 Ky. 78; Moran v. Vicroy, 24 Ky. Law Rep. 2415.

Nor is the objection that the threats, made about one year prior to the assault and battery complained of, were too remote from their occurrence well taken. These threats were sufficiently near the difficulty to be admissible and their weight was for the jury. Abbott v. Com., 24 Ky. Law Rep. 148.

Especially is this true on account of the continued state of bad feeling that had existed between Marshall and Glover for some three years prior to the difficulty. We think that when a continued state of ill feeling is shown to exist threats made at any time during its existence are competent. On the other hand, threats made an unreasonable length of time before the date of the transaction under investigation would not be admissible if it appeared that, after the date of these alleged threats, friendly relations had continuously existed between the parties up to the time of the assault and battery complained of.

We think, however, the court fell into error in permitting Glover to relate the nature of the threats communicated to him by Wright, Frazier and Rogers.

It was competent for Glover to testify that threats made by Marshall against him had been communicated to him before the difficulty and to give the names of the persons who furnished the information, but not more. If the defendant or the plaintiff, as the case may be, wants to prove threats he must introduce the witnesses to whom the threats were made and who communicated them to him and should not be permitted to relate what these witnesses told him. Hutts v. Shoaf, 88 Ind. 395. If a party to a suit could, without introduction of witnesses, relate in detail or substance the threats communicated to him this would enable him to support his case by

purely hearsay evidence and leave the other party unable, in the absence of the witnesses who heard the threats, to meet the issue.

An exception, however, to this rule is found when the witness who heard and communicated the threat is dead at the time of the trial. Carico v. Commonwealth, 7 Bush 124. Another exception should be made when the witness who heard the threat and communicated it cannot be produced or his deposition secured, and in such a case upon a proper showing of these facts the party may give in evidence the threats the absent witness communicated to him.

But in this case it was not made to appear that the evidence of Frazier and Rogers could not have been obtained, and therefore the evidence of Glover in relating what they said to him was incompetent.

As we have said, Glover should not have been permitted to testify as to the nature of the threats alleged to have been communicated to him by Wright, Frazier and Rogers, but the error in this respect, so far as the threats communicated by Wright are concerned, was clearly not material, because Wright when put on the witness stand testified that he told Glover before the difficulty what Glover testified he had said to him.

The remaining question is: was the error in permitting Glover to relate the threats communicated to him by Frazier and Rogers of sufficient importance to constitute reversible error? Under all the circumstances of the case we do not think so.

The evidence on this point by Glover was as follows:

"Q. Previous to this shooting state whether any one communicated to you the facts with reference to your life being threatened by Mr. Marshall? A. Yes, sir. Q. What was it? A. I had communication from Jim Wright, Marion Frazier and Thelbert Rogers. Q. What was it Wright told you Marshall threatened to do? A. He said if he ever caught me on his place that I was the damnedst thief he ever saw and if I ever crossed his path he would beat hell out of me. Q. What did Marion Frazier say? A. He said I had given him some trouble and he was going to beat hell out of me. Q. What did Thelbert Rogers say? A. That I was putting some of his hogs up and I was starting a big war and he was going to beat hell out of me."

It will be noticed that all these threats were expressed in substantially the same words, and that those alleged to have been communicated by Frazier and Rogers could not have had much weight with the jury in making up their verdict is made quite clear by the understanding that Glover did not shoot Marshall on account of what his son Newman or Wright or Frazier or Rogers may have told him but because he believed his life to be in danger and that it was necessary he should shoot in his self-defense.

It is further worthy of notice that when Marshall was put on the witness stand he was not inquired of about the threats alleged to have been made by him to Wright, Frazier and Rogers, nor did he on his own motion deny making any of them unless it could be said that his answer, "I never made any threats at him or about him or to him in my life," to the question asked if he made any threats to Glover at the time the difficulty took place could be construed as a denial of the previous threats. And this is very doubtful. At any rate we are well satisfied that the admission of this incompetent evidence was not prejudical to the substantial rights of Marshall.

Wherefore the judgment is affirmed.