FRED M. MILLER, APPELLEE, V. AXEL E. OLANDER, APPELLANT.

277 N. W. 72

FILED JANUARY 7, 1938. No. 30155.

*Mossman, Anderson & Meissner,* for appellant.

*Frost, Hammes & Nimtz, contra.*

Heard before Goss, C. J., Rose, Day, Paine, Carter and Messmore, JJ., and Munday, District Judge.

Paine, J.

This is an action to recover damages for an assault and battery. A judgment was entered for $1,500, being the amount of the verdict of the jury. A motion for a new trial was overruled, and the defendant appealed.

The assault took place on February 14, 1936. The plaintiff was a young man 16 years of age at that time, and the defendant was 74 years of age. The plaintiff was living with his parents and sister in an apartment house owned by the defendant, at 1307 South Twenty-fifth avenue, Omaha, and next door to the house in which the defendant lived. There were six apartments in the apartment house.

On the day of the assault the young man was at home taking care of his mother, who was sick in bed with double pneumonia. In attempting to get some water in which to give her medicine, he discovered that the water was shut off. He went over to his landlord and asked if the water had been shut off, and the landlord denied that the water had been shut off. The young man went back home, secured water from an adjoining apartment, and an hour or so later the furnace in their apartment began cracking and snapping, and, thinking there was some danger if the water was shut off, because it was a very cold day and the furnace was hot, he went across to the home of the defendant between 4 and 5 o'clock in the afternoon. He knocked at the door and the defendant came to the door, and he asked him if he could go down in the basement to see if the water was shut off. Plaintiff testifies that the defendant thereupon called him a deadbeat and crook, pushed him and hit him on the head with a flashlight, and when he fell on the steps he kicked him in the back a couple of times, and defendant slammed the door and went back in the house. The brother-in-law of the plaintiff testified that he quit work at 3:30 that afternoon, and was going by the house to see how the mother was getting along just as the

defendant hit the plaintiff with a flashlight and knocked him down, and saw him kick him a couple of times while he was on the ground. He described the flashlight as the regular five-cell flashlight, with a large head on it, and that he hit him with the large end; that he assisted him home into the house and stayed around there for an hour and a half; that the boy was sick and vomited, and had a big lump on the right side of his head about the size of an egg.

The plaintiff testifies that he did not work again for months. Dr. William J. Nolan testified that the plaintiff came to his office on February 20; that there was a bruised and discolored area, about 1½ by 2 inches, over the right frontal and parietal region of his head; that his neck muscles were stiff, spastic, and painful; that there was rigidity and pain in the back muscles in the lumbar region, and the patient was unable to bend or turn his spine in any direction; that there were also symptoms that led him to diagnose concussion of the brain, as there was dizziness and tottering when the patient stood up with his eyes closed; that he was unable to maintain his balance, was sick at his stomach, and the light hurt his eyes; that he put him under the infra-red ray lamp on his back and on his neck, and had ice-packs put on his head when he went home; that he strapped up his back with adhesive plaster criss-crossed, including the hips and small of the back; that he saw him daily for some time, and gave him treatments with infra-red lamp, and after a while saw him every second or third day, and that he was under his care during the whole year following the assault.

The defendant tells a different story of the assault. His answer to question 531 is: "Well, what he came over for, he ran into the place and called me a son-of-a-bitch and asked why I turned off the water. I says, 'I have not turned off the water,' and he started at me, and of course I didn't take it." He testifies that he ordered him to get out of there, and pushed him out of the east door, and admits that he kicked him "one in the behind." Defendant said that

the flashlight he had was a copper flashlight, about eight inches long, and that the head of the flashlight is a little larger.

The defendant sets out 11 assignments of error: First, the refusal of the court to direct a verdict for the defendant, the overruling of objections to testimony, and sustaining of plaintiff's objection to testimony offered by the defendant, especially the refusal of the court to permit the defendant to show that the plaintiff was not legally entitled to the possession of the premises, and that a judgment for restitution had been granted to the landlord against the tenants, and that the defendant was entitled to refuse water to the premises at the time the assault took place.

The defendant also sets up as error the giving of instructions Nos. 7, 8 and 9, and insists that the verdict was grossly excessive and the result of passion and prejudice. The first paragraph of instruction No. 7 reads as follows: "Assault and battery consists in an injury actually done to the person of another in any angry, revengeful or insolent manner." And defendant calls our attention to the case of *Sanderson v. Huffman*, 132 Neb. 321, 271 N. W. 870, in which this court held: "Mere anger on the part of a defendant at the time of making an alleged assault * * * will not, of itself, make such an assault unlawful." However, the paragraph of instruction No. 7 above quoted was taken from the early case of *McClure v. Shelton*, 29 Neb. 370, 45 N. W. 689, except that the word "rude" has been omitted, and in the text in that case, in the opinion written by Judge Maxwell, it is said that the instructions as a whole state the law correctly, and the instruction has been used by many district judges, without objection. We see no objection to this instruction.

The affidavits and exhibits offered in support of the motion for new trial throw several sidelights upon the case.

It appears that the plaintiff carried a Mutual Benefit Health and Accident policy at the time of the assault. He filed a claim, describing the assault, and set out that he

was unable to work from February 14 to March 16, and upon this claim he was allowed and drew $5 a week for only three weeks, a total of $15.

Affidavits of witnesses, which defendant had been unable to find before the trial, are to the effect that six days after the assault, when the Millers moved out of the apartment, the plaintiff helped in carrying out furniture. And, also, that before May 15, 1936, plaintiff was again working at "Jim's Auto Parts" establishment, doing heavy work in wrecking automobiles and loading the steel into freight cars, and that plaintiff made no complaint.

The defendant also calls our attention to Restatement, Torts, sec. 75, which reads: "Under the statement in subsection (2, a), one attacked in his dwelling place may await his assailant and use deadly force to repel him though he could prevent the assailant from attacking him by closing the door and so excluding the assailant from the premises."

The defendant has filed a large number of affidavits, setting out evidence which he was unable to obtain at the trial, such as the claim of $15 received upon plaintiff's accident policy, the evidence of Roy W. Miller, who states positively that the plaintiff was back working in Jim's Auto Parts as early as the first week in April, and affidavits of witnesses who would testify as to his condition, and that plaintiff grossly exaggerated his injuries to the jury.

In considering the ruling upon the motion for a new trial, we find that in section 20-1142, Comp. St. 1929, the seventh ground for new trial sets out: "Newly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial." This section was discussed at length in *Wiegand v. Lincoln Traction Co.*, 123 Neb. 766, 244 N. W. 298. To warrant a new trial on the ground of newly discovered evidence, it must, in every case, appear that the evidence could not have been discovered by due diligence. *Erwin v. Watson Bros. Transfer Co.*, 129 Neb. 64, 260 N. W. 565.

In examining the affidavit filed by Walter L. Anderson, attorney for defendant, he describes the efforts that he made to locate witnesses prior to the trial; that his client had suffered a loss of memory, and was unable to assist him or to relate the facts, or to tell whether any one was present at the time of the assault, and affirms on oath that neither he nor his client were able to find the witnesses or to secure their evidence until just before these affidavits were signed.

If this evidence was merely cumulative it would not warrant a new trial, for the addition of a few more witnesses on the same question of fact does not justify a new trial, for juries are instructed that they should not be controlled by mere number of witnesses to a given fact. The new evidence appears to be positive, and it might cause the jury to take an entirely different view of the case, or in any event would undoubtedly affect the amount of the verdict of the jury returned, and this court has reached the conclusion that the verdict of $1,500 in this case was excessive under all the evidence.

Without discussing the many other errors set out in the motion for new trial and brief of the defendant, we have stated enough upon which we base our conclusion that the verdict and judgment of the jury must be set aside and the cause remanded for a new trial.

REVERSED AND REMANDED.

ROSE, J., dissents.