## AARON MORSE *v.* ARCHIBALD CRAWFORD.

If property be bailed for a specified time, and, before the term expires, the bailee destroy the property, the bailor may sustain trover against him for its value.

That the defendant, in an action for a *tort*, was insane, at the time of committing the injury, is no defence to the action ; and, if the action be for destroying property entrusted to the defendant, it is no defence that the plaintiff, at the time of delivering the property to the defendant, knew that he was insane.

A witness, not a professional man, may give his *opinion* in evidence, in connection with the facts upon which his opinion is founded, and as derived from them ; though, *Per* BENNETT, J., he could not be allowed to give his opinion, founded upon facts proved by other witnesses.

When it appears from the whole case, as stated in the bill of exceptions, that the plaintiff is entitled to recover, the case will not be remanded, for a new trial, though evidence, offered by the defendant in the court below, may have been rejected improperly under the view there taken of the case by the parties and the court.

TROVER for one ox. Plea, the general issue, and trial by the jury.

On trial it was conceded by the defendant, that, previous to May, 1844, the plaintiff delivered to the defendant a pair of oxen, to be kept by the defendant and worked sufficient to pay for their keeping, and that, on or about the tenth day of May, 1844, the defendant killed one of the oxen, while at work with them, by putting a cord around his neck and strangling him.

The defendant's counsel then introduced testimony, tending to prove that the defendant, about thirty years ago, was insane, and that he had been insane at intervals, ever since, and that he was insane at the time the oxen were delivered to him by the plaintiff, and also at the time he killed the ox, and that this was known to the plaintiff. The defendant's counsel then proposed to inquire of the witnesses, who were acquainted with the defendant and had conversed with him, their opinion as to his insanity ; to this the plaintiff objected, for the reason that the witnesses were not professional men, and had no skill in such matters, and the testimony was excluded by the court.

The defendant's counsel requested the court to charge the jury, that, if they found that the defendant was insane generally, and that the plaintiff suffered the oxen to go into his possession voluntarily, knowing that he was insane, and that he killed the ox as the testimony tended to show, the plaintiff was not entitled to recover;— and that, if they found that the defendant had been insane at intervals for the last thirty years, and had lucid intervals, the burden of proof was upon the plaintiff, to show that the defendant killed the ox in a lucid interval.

The court instructed the jury, that, if the plaintiff delivered the oxen to the defendant when he was insane, and this known to the plaintiff, and that the defendant was insane at the time he killed the ox, the plaintiff was not entitled to recover, but that the burden of proof was upon the defendant, to show, that, at the time of killing the ox, he was insane.

The jury returned a verdict for the plaintiff. Exceptions by defendant.

*A. Underwood* for defendant.

1. The defendant insists that the Court erred, in excluding the witnesses from giving their opinion as to the insanity of the defendant. Though, as a general rule, professional men and men of skill in particular matters, only, can express an opinion, yet in cases of insanity the rule is different. *Lester* v. *Pittsford*, 7 Vt. 158. *Clark* v. *State*, 12 Ohio Rep. 483, cited in 7 Law Reporter, No. 7, Title *Insanity*. 3 Stark. Ev. 1707, note 2, and cases cited.

2. The court erred, we insist, in instructing the jury, that they must find the defendant insane, at the time the oxen went into his hands and that the plaintiff knew it. It could make no difference, that the plaintiff might have bailed the cattle to the defendant in a *lucid interval*. If he knew the defendant was subject to fits of insanity, the plaintiff could be considered none the less rash, heedless and fool hardy, from the fact that he selected a *lucid interval*, wherein to put his property into the hands of defendant.

3. The burden of proof, we insist, is upon the plaintiff to show that defendant was sane, at the time of doing the act which caused the death of the ox. " *Semel furibundus, Semper furibundus praesumitur.*" 3 Stark. Ev. 1702–3; *Att'y General* v. *Parnther*, cited in note to Ib.

Morse *v.* Crawford.

*Farr* and *Leslie* for plaintiff.

1. Insanity is no defence to an action of this kind; for, if proved, it only goes to the intention with which the act is done, or to show that it was done without any intent in law. But in this action the intention is immaterial. The defendant would be equally liable, if he killed the ox by mistake, or without designing so to do, as by accident. 1 Chit. Pl. 65. 5 Bac. Abr. Tit. *Trespass* G. 184. 4 Bl. Com. 25, note 5. 3 Bac. Abr. 86. 2 Saund. Pl. & Ev. 650. 14 Mass. 207. Ray's Med. Jur. of Insanity, 237–8. 1 Sw. Dig. 531. Brown on Actions at Law 218.

2. The witnesses, whose opinions were asked, were not professional or scientific men, and they were not asked to give, in connection with their opinion, the facts on which it was founded,— without which it is inadmissible. 7 Vt. 161. 1 Conn. 9. 1 Sw. Dig. 749. 9 Mass. 225. 3 Stark. Ev. 1707, note.

3. There was no testimony, tending to show general insanity, in the case; of course the defendant was not entitled to the charge by the court, as requested, in relation to that matter. It is not the duty of the court, to instruct the jury, upon points that do not arise in the case, and which have no connection with it.

4. If the defendant was insane by turns and had lucid intervals, as the testimony tended to show, the burden of proof, to show the state of the defendant's mind when the act was done, rests on the defendant. The presumption is in favor of sanity. 3 Bac. Abr. 89. 1 Russell on Crimes 7. Ib. 17, note.

5. That the plaintiff bailed the ox to the defendant, knowing him to be insane, can make no difference, if true; no contract was made about killing the ox, nor would any action on contract be the proper action in this case.

The opinion of the court was delivered by

BENNETT, J. No question was made on the trial in regard to the ownnership of the ox, or as to the fact, that he was killed by the defendant. The oxen, it seems, were bailed by the plaintiff to the defendant, to be used by him to pay for their keeping, and it appears, that while the defendant had them in his possession under this contract, he destroyed one of them by strangling him.

The defence was put upon the ground that the defendant was *in-*

*sane,* both at the time of the bailment, and also at the time he killed the ox, and that the plaintiff knew of his insanity, when he bailed him the oxen. Can such a defence avail the defendant?

It is a common principle, that a *lunatic* is liable for any *tort,* which he may commit, though he is not punishable *criminally.* When one receives an injury from the act of another, this is a trespass, though done by mistake, or without design. Consequently, no reason can be assigned, why a lunatic should not be held liable. The fact, that the plaintiff might have known that the defendant was insane, when he let him have the oxen, cannot toll his right of action. To give to it that effect, it would be necessary to infer from it the plaintiff's assent to the trespass. Though this might evince a want of prudence in the plaintiff, in entrusting his oxen in such hands. Yet it is no evidence, tending to prove his assent to their destruction. It is possible, that, if the evidence had shown that the plaintiff had bailed the oxen to an insane man, under an expectation that he might destroy them, so as to charge himself in trespass for their value, the rule might have been different. There might have been some little plausibility in claiming that this was equivalent to an assent, on the part of the plaintiff, to the trespass.

The bill of exceptions states, that the defendant's counsel proposed to ask the witnesses, who were acquainted with the defendant and had conversed with him, their opinion as to his insanity; which the court overruled. The counsel on both sides seem to consider the question, on this bill of exceptions, to be, whether the opinion of a witness, (who is not a professional man,) as devoid from personal observation of the defendant can be given in evidence, touching his insanity. The law is well settled, and especially in this state, that a witness may give his opinion in evidence, in connection with the facts upon which it is founded, and as derived from them; though he could not be allowed to give his opinion founded upon facts proved by other witnesses. If we are to understand the bill of exceptions as the parties seem to understand it, we think the evidence would have been improperly rejected, in a case in which the insanity of the defendant was properly in issue. But in this case the plea of insanity, if made out on the trial, could not have availed the defendant; and of course there was no error in the rejection of this testimony, which can avail the party. In this view

of the case the question, upon whom the burden of proof was cast, as to the defendant's sanity, at the time when the oxen were bailed; and also when the ox was killed, became of no account.

No sound objection can be urged against this form of action, as arising from the contract of bailment. It must, at all events, have been determined by the tortious act of the defendant.

As it appears from the whole case that the plaintiff is entitled to judgment, the judgment of the county court is affirmed.