797 P.2d 108

Kenneth F. WHITE and Carol S. White, husband and wife, Plaintiff-appellants,

v.

The UNIVERSITY OF IDAHO and Richard Neher, Defendant-respondents.

No. 18046.

Supreme Court of Idaho.

Aug. 7, 1990.

L. Kim McDonald, Nampa, and Harry M. Philo, Detroit, Mich., argued, for appellants.

Quane, Smith, Howard & Hull, Boise, for respondent University of Idaho. Terry L. Spencer argued.

Elam, Burke & Boyd, Boise, for respondent Neher. Robert Tyler argued.

BAKES, Chief Justice.

This is a review of a decision of the Idaho Court of Appeals. The Whites appealed the trial court's grant of partial summary judgment which dismissed their complaint against the University of Idaho on the grounds that the incident complained of was a battery, thereby entitling the University to immunity under relevant provisions of the Idaho Tort Claims Act. The decision of the trial court was affirmed by the Court of Appeals. We granted the Whites' petition for review and now affirm.

Carol and Kenneth White brought this action as a tort claim against the University of Idaho and Professor Richard Neher, alleging that Professor Neher, while acting within the course and scope of his employment with the University, struck Mrs. White, causing her injuries. The district court granted the University's motion for summary judgment, holding that under the Idaho Tort Claims Act, I.C. § 6–904(3),[1] a governmental entity has no liability "for any claim which ... [a]rises out of ... battery" committed by an employee. The district court granted partial summary judgment in favor of the University and issued a Rule 54(b) certificate, certifying that the partial summary judgment was final and appealable.[2]

---

1. Prior to 1988, I.C. § 6–904(3) was denominated I.C. § 6–904(4), but the language of the subsection was not changed.

2. The partial summary judgment was only entered in favor of the defendant University of Idaho. The Whites' claim against the defendant Neher apparently remains pending in the district court.

The Whites appealed, and the case was assigned to the Court of Appeals. In a *per curiam* opinion, the Court of Appeals upheld the decision of the district court. We granted a review of the Court of Appeals decision.

The Court of Appeals opinion presents a clear and concise statement of the facts:

Professor Neher and Mrs. White had long been acquainted because of their mutual interest in music, specifically, the piano. Professor Neher was a social guest at the Whites' home when the incident here occurred. One morning Mrs. White was seated at a counter writing a resume for inclusion in the University's department newsletter.

Unanticipated by Mrs. White, Professor Neher walked up behind her and touched her back with both of his hands in a movement later described as one a pianist would make in striking and lifting the fingers from a keyboard. The resulting contact generated unexpectedly harmful injuries, according to the Whites. For purposes of summary judgment, we deem these allegations to be true. Mrs. White suffered thoracic outlet syndrome on the right side of her body, requiring the removal of the first rib on the right side. She also experienced scarring of the brachial plexus nerve which necessitated the severing of the scalenus anterior muscles.

Both Professor Neher and Mrs. White gave deposition testimony which is summarized as follows. Professor Neher stated he intentionally touched Mrs. White's back, but his purpose was to demonstrate the sensation of this particular movement by a pianist, not to cause any harm. Professor Neher explained that he has occasionally used this contact method in teaching his piano students. Mrs. White said Professor Neher's act took her by surprise and was non-consensual. Mrs. White further remarked that she would not have consented to such contact and that she found it offensive. The Whites argue that because Professor Neher did not intend to cause harm, injury or offensive contact, his act constitutes negligence rather than the intentional tort of battery.

115 Idaho at 565, 768 P.2d at 828.

From these facts, the Court of Appeals concluded that Professor Neher did in fact commit a battery, reasoning that under Idaho law the intent required for the commission of a battery is simply the intent to cause an unpermitted contact not an intent that the contact be harmful or offensive. We agree with the Court of Appeals and affirm the decision of the district court.

The sole issue presented by these facts is whether Professor Neher's contact with Mrs. White constituted a battery. If it did, then the University of Idaho is immune from liability under I.C. § 6–904(3). That issue in turn revolves around the question of what type of intent is required to constitute a battery; *i.e.*, must the defendant intend to harm or offend the plaintiff, or must the defendant simply intend to touch the plaintiff? On appeal, all parties stipulated that Professor Neher intended to touch Mrs. White but did not intend to harm or offend her.

Appellants' argument is essentially that, under Idaho law, a defendant must intend to either harm or offend the plaintiff in order for such contact to constitute a battery, and since Professor Neher did not intend to harm or offend Mrs. White, his touching could not have been a battery. Appellants assert that the decisions of this Court, *e.g., Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986), require intentional conduct, *i.e.,* intent to harm or offend, in order to constitute a battery. While we stated in *Doe* that, "A battery, on the other hand, requires intentional bodily contact which is either harmful or offensive," 110 Idaho at 471, 716 P.2d at 1243, that does not mean that the person has to intend that the contact be harmful or offensive.

In *Rajspic v. Nationwide Mut. Ins. Co.,* 110 Idaho 729, 718 P.2d 1167 (1986) (*Rajspic II*), we held that the intent necessary to commit a battery was intent to commit the act, not the intent to cause harm. The *Rajspic* case involved an altercation in which one William Brownson was shot and

injured by Grace Rajspic. Rajspic was charged with criminal assault but was acquitted because of insanity. Subsequently, Brownson sued for and recovered a $14,000 judgment against Rajspic for the battery resulting from the shooting. Following entry of judgment in the battery action, Rajspic brought suit against her insurance company to indemnify her against the judgment, and the insurance company denied coverage on the basis of an intentional tort exclusion in the insurance policy. After the first remand from this Court in *Rajspic v. Nationwide Mut. Ins. Co.,* 104 Idaho 662, 662 P.2d 534 (1983) (*Rajspic I*), the trial court granted Nationwide's motion for summary judgment denying liability, reasoning that because "the jury in *Brownson* found Grace Rajspic had committed an intentional tort [battery] the Rajspics were collaterally estopped from litigating whether the injuries caused by Mrs. Rajspic's conduct [was an intentional tort excluded] by the insurance policy." On appeal in *Rajspic II,* 110 Idaho at 732, 718 P.2d at 1170 (1986), this Court reversed the trial court's granting of summary judgment in favor of Nationwide on the issue of liability, holding that the intent required to commit the tort of battery was not the same as the intent required for the intentional tort exclusion in the insurance policy, and therefore collateral estoppel did not apply. The Court held that the intent necessary to trigger the intentional tort exclusion in the insurance policy was an intent by Rajspic to cause injury to Brownson. However, the Court stated that the only intent necessary to prove the battery in the civil action was an intent to do the act, not intent to do harm or offense. Had the Court in *Rajspic II* adopted the position advocated by appellants in this case, *i.e.,* that battery requires an intent to harm or offend, then collateral estoppel would have applied, and the Court in *Rajspic II* would not have reversed the trial court.

The Court in *Rajspic II* approved Instruction 19 which had been given in Brownson's underlying civil battery action in which Brownson obtained his $14,000 judgment against Rajspic, describing Instruction 19 as "a correct application of the issue of a tortfeasor's sanity when applying it to the elements of intentional torts of assault and battery." The Court stated regarding Instruction No. 19:

> What the jury found in *Brownson* was that Mrs. Rajspic was capable of forming the intent to commit a battery. That intent, the jury was instructed, did *not* mean she had to have formed the specific intent to do injury. Instruction No. 19, the instruction as to Mrs. Rajspic's insanity, read:
>
>> "Insanity is not a defense to a civil action for assault and battery, intentionally committed by the insane person, and the intent referred to is the intent to do the act complained of. It is not required that the assailant intend to kill or injure the party attacked. Thus, if you find that Mrs. Rajspic committed a battery against the plaintiff by shooting him intentionally, rather than accidentally, she should not be relieved from liability because she was insane at the time of the shooting and incapable of malice or specific intent to do injury."
>
> This instruction ... is a correct application of the issue of a tortfeasor's sanity when applying it to the elements of the intentional torts of assault and battery. It is *not,* however, a correct application of the issue of an insured's sanity when applying it to an insurance clause that excludes coverage for injuries caused intentionally by the insured. Hence, the two issues are distinct.

110 Idaho at 733–734, 718 P.2d at 1171–1172.

Instruction No. 19, approved in *Rajspic II,* dealing with insanity as a defense to a civil action for battery, specifically states that the intent requirement for battery is simply the "intent to do the act complained of." That instruction was supplemented by Instruction No. 12, another instruction given to the jury in the underlying case of *Brownson v. Rajspic* (Civil Case No. 4886), which stated, "The intent necessary to constitute civil battery means an intent to do the act which causes the harm." We thus recognized in *Rajspic II* that the intent

requirement for battery, as embodied in the jury instructions which we approved in that case, did not require an intent to injure or harm, but merely an intent to do the act complained of. That recognition was necessary to the ultimate determination in *Rajspic II*, which reversed the trial court's collateral estoppel holding. It constitutes an explicit holding of this Court to which we adhere and to which the lower courts of this state are bound.[3]

The Court of Appeals in the instant case cited and relied on our holding in *Rajspic II*. In its *per curiam* opinion the Court of Appeals states:

> The intent element of the tort of battery does not require a desire or purpose to bring about a specific result or injury; it is satisfied if the actor's affirmative act causes an intended contact which is unpermitted and which is harmful or offensive. *See Rajspic v. National Mutual Ins. Co.*, 110 Idaho 729, 718 P.2d 1167 (1986)....

115 Idaho at 565, 768 P.2d at 828. *See also Pierson v. Brooks*, 115 Idaho 529, 768 P.2d 792 (Ct.App.1989).

The district court correctly applied the law relating to the tort of battery, as the Court of Appeals concluded. We affirm the decision of the district court granting partial summary judgment in favor of the University.

Costs to respondent. No attorney fees allowed.

JOHNSON, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, dissenting.

My reading of the majority opinion has little changed my own views expressed earlier, other than to note that the Court's opinion has a chilling effect on any thought of ever again tapping a dancing gent on the shoulder to ask, "May I?" Today it is learned that so doing is a battery even though no harm or offense is intended. One lives and learns. Until today it was though that "battery" had been long ago defined by the Idaho legislatures, both territorial and state, as the willful and unlawful use of force or violence upon the person of another. Cr.P. 1864, and until 1979, I.C. § 18–903. After 1979, battery as revamped remained unchanged, although altered. It still included willful and intentional use of violence, unlawful and intentionally causing bodily harm to another, or actual, intentional and unlawful touching or striking another against the will of the other. In all instances the element of unlawful is included. "Willful" and "intentional" being synonymous, the element of intent remained intact notwithstanding the slight rewording in I.C. § 18–903.

The Idaho Tort Claims Act specifically makes governmental entities subject to liability for the negligent or otherwise wrongful acts of its employees, I.C. § 6–903, if those acts are within the scope and course of employment, and are not tainted with malice or criminal intent, I.C. § 6–904, *except* as to claims which arise out of an assault, a battery, and other actions which are different from and unrelated to the issue before us. Assault may be dropped from consideration, there being no contention that Professor Neher's actions constituted an assault.

There should be no doubt in any reasonable mind that the legislature was of the view that the *malice* or *criminal intent* exceptions of I.C. § 6–903 and the battery and assault exceptions of I.C. § 6–904 are of the same ilk: simply that employees acting within the scope and course of employment are deemed legally incapable of doing violence on third persons which is in

---

**3.** Appellants argue that certain provisions of the Restatement (Second) of Torts define the intent element of battery as including an intent to harm or offend. Without attempting to unravel which position the Restatement (Second) ultimately embraces—for it could be interpreted as supporting either position—we simply note that we have not previously adopted the Restatement (Second) in Idaho and decline any invitation to do so now. This Court did not in specific language "adopt" the Restatement (Second) definition of battery in *Doe v. Durtschi*. In the course of discussing the distinction between negligence and battery, the *Doe* opinion paraphrased part of Section 13 and then cited to the section. However, the Court did not expand any further on the definition of battery, nor did it need to in the context of the *Doe* opinion.

the best interests of their employer, a governmental entity.

If the Court were to stay within the context of this case, which is of first impression, it is inescapable that the Court would be found paying heed to the legislature's use of "battery" in the 1971 legislation which created the Tort Claims Act. The Court is faced with the proposition of declaring what the legislature had in mind in 1971 when it wrote and passed the Tort Claims Act. The question to be asked is this: Did the Tort Claims Act contemplate liability where an employee of the governmental entity merely touched a person who, if asked beforehand whether he or she consented, or would be offended thereby, would have said, "Yes?" Was the mere unconsented touching of a person the "battery" definition which the legislature had in mind? Did the unconsented touching have to be against the will of the other person? Or was it the common type of battery where a person commits a battery by intentionally inflicting physical violence on another?

The majority will be seen by the trial bar as today inflicting a violent distortion of the Tort Claims Act by improvising and declaring the theory that the legislature had in mind the obscure definition that "battery" as used means naught but a slight touching by the toucher which is subjectively offensive to the touchee. While it is difficult to conceive of situations such as those present here, where the unconsented touching between two people who were friends and associates (the toucher being a house guest of the touchee and her husband), there are conceivably scores of circumstances where an employee might commit an act of violence on a third person. A ready example would be a ticket-taker at a theater or ball game who gets provoked at a rude and irascible customer who berates and vilifies him. Many more come to mind.

The majority goes a long, long way today in distorting the use in the Tort Claims Act of the extremely common word "battery" into the meaning of an intentional touching even though wholly sans injurious intent.

Over more than a century now this Court has over and over turned and returned to the policy that the words of a legislative enactment will be accorded their generally accepted common and usual meaning. Were the majority to pause in the endeavor of keeping the Whites from presenting their case to a jury, a quick look at Webster's New Collegiate Dictionary would be informative. The word battery is of French origin, "battre" meaning to beat, and the first anglicized definition being "the act of battering or beating." In turn "batter" has definitions, all similar, which are "to beat with successive blows," "to strike heavily and repeatedly," "to subject to strong, overwhelming, or repeated attack."

In authoring the majority opinion, Chief Justice Bakes has written:

> The sole issue presented by these facts is whether Professor Neher's contact with Mrs. White constituted a battery. If it did, then the University of Idaho is immune from liability under I.C. § 6–904(3). That issue in turn revolves around the question of what type of intent is required to constitute a battery; *i.e.*, must the defendant intend to harm or offend the plaintiff, or must the defendant simply intend to touch the plaintiff? On appeal, all parties stipulated that Professor Neher intended to touch Mrs. White but did not intend to harm or offend her.

At 401, 797 P.2d at 109. At that point his opinion lapses into a dissertation on battery as considered in the context of an exclusionary clause in an insurance policy, and, of all things, in connection with insanity, which certainly is not involved here. What the opinion does not do, and what needs to be done is to look for guidance which is in context. Decisions from other jurisdictions also provide guidance regarding the intent necessary to constitute an actionable battery. We are furnished with citations of other case law precedent distinguishing battery from negligence. A well-reasoned decision from the Supreme Court of Nebraska states as follows:

At about 8:30 on the evening of March 18, 1945, the plaintiff, defendant, and two other friends were playing pitch in the Elks Club at Fremont. At the completion of a game two one-dollar bills were left lying on the corner of the table, which the plaintiff in a playful spirit said if the defendant did not want to get them off the table, and plaintiff thereupon pushed the money off the table. The plaintiff was sitting in a bentwood chair, with gliders under the legs, the linoleum on the floor being highly waxed. The defendant stooped down to get the money, grabbed plaintiff's right foot, and gave it a sharp jerk upward. The chair spun away and plaintiff fell over backward, with his feet in the air, striking the middle of his back. However, while he continued the game that evening, yet from the fall he allegedly suffered serious injuries to his back and spine. He charged in his petition that he was unable to do any work for a period of approximately 38 weeks thereafter and will hereafter be partially disabled, decreasing his earning capacity at least 50 percent, the injury to his eighth dorsal vertebra causing great pain, and the injuries are permanent.

The answer admitted the occurrence, which it claimed was 'horse play,' and charged that the cause of action, if any, was barred by the statute of limitations.

The two assignments of error are that the trial court erred in sustaining the defendant's motion to dismiss at the conclusion of the plaintiff's evidence, and erred in overruling the plaintiff's motion for a new trial.

The sole question involved is whether the action was governed by section 25–208, R.S.1943, which provides that actions for assault and battery must be brought within one year, or by section 25–207, which provides that actions for tort can be brought within four years. The petition in this case was filed over a year and a half after the action arose.

If the act of the defendant was a battery, the Nebraska law requires that it should be filed within one year, and on that point alone the trial judge dismissed plaintiff's action.

*Newman v. Christensen*, 149 Neb. 471, 31 N.W.2d 417, 418 (1948). The Nebraska court reviewed several definitions of battery by various authorities:

'A battery is defined as an actual infliction of violence on the person, or an unlawful, that is, an angry, rude, insolent, or revengeful touching of the person. Hilliard on Torts (3d Ed.) 181, Secs. 8 and 9.' *Razor v. Kinsey*, 55 Ill.App. 605.

. . . .

'An assault and battery is not negligence. The former is intentional; the latter is unintentional.' 6 C.J.S., Assault and Battery, § 11.

'Bishop, in his work on Criminal Law (volume 2, § 72,) says that to constitute a battery, "there must be some sort of evil in the intent." We are therefore prepared to say that to constitute an assault and battery under the foregoing definitions the act complained of must be done with a hostile intent. . . . Under the petition as drawn, the plaintiff is entitled to recover upon showing any degree of negligence, whether ordinary or gross, and we do not think that mere acts of negligence in any of its degrees are assaults and batteries in the meaning of the statute.' *Perkins v. Stein & Co.*, 94 Ky. 433, 22 S.W. 649, 650, 20 L.R.A. 861.

The limit for bringing actions in Minnesota and Wisconsin for battery is two years, and we cite a case from each court.

'The action for a battery, which must be brought within two years, is therefore held to be *an intentionally administered injury* to the person.' *Donner v. Graap*, 134 Wis. 523, 115 N.W. 125, 127.

'The action for a *battery* which, under the provisions of section 8, subd. 1, supra, must be brought within two years, *is* an action *founded upon an intentionally administered injury to the person,* —such an injury as could be made the basis of a criminal prosecution.' *Ott v. Great Northern Ry. Co.*, 70 Minn. 50, 72 N.W. 833.

This court has said that 'Assault and battery consists in an injury actually done to the person of another in any angry, revengeful, or insolent manner.'
*Miller v. Olander*, 133 Neb. 762, 277 N.W. 72, 73.

*Newman*, 31 N.W.2d at 418–19 (emphasis added). Following that review, the *Newman* court unanimously concluded:

[T]hat, while actions for assault and battery, under section 25–208, R.S.1943, must be brought within one year, *this action is one for negligence, being an act which an ordinarily prudent man would not have done*, and therefore, being in tort, may be brought within four years, as provided in section 25–207, R.S. 1943.

*Newman*, 31 N.W.2d at 420 (emphasis added).

Courts in other jurisdictions have reached the same conclusion as that of the Nebraska court. In our neighboring state of Washington, the court had earlier said:

An act cannot ... be considered a battery unless the actor intended to cause a harmful or offensive contact with another person.

*O'Donoghue v. Riggs*, 73 Wash.2d 814, 440 P.2d 823, 827 (1968). An Oregon case, this one written almost forty years ago, drew this distinction:

An assault and battery is not negligence. The former is intentional and willful; the latter unintentional. When defendant's conduct is willful and intentional, it is no longer negligence.

*Denton v. Arnstein*, 197 Or. 28, 250 P.2d 407, 415 (1952).

The Virginia court said:

Whether the touch constitutes a battery will depend not upon the amount of force applied, but upon the intent of the actor.

*Wood v. Commonwealth*, 149 Va. 401, 140 S.E. 114, 115 (1927). From New York:

[E]very laying on of hands is not battery. The party's intention must be considered.... To constitute a battery, *the intent to injure* must concur with the use of unlawful violence upon the person of the assaulted party; but the slightest degree of force suffices to constitute violence, and the intended injury may be to the feelings or mind of the latter, as well as to the corporeal person.

*Clayton v. Keeler*, 18 Misc. 488, 42 N.Y.S. 1051, 1053 (1896) (emphasis added). And, from Connecticut, this:

An injury willfully or intentionally inflicted—sometimes referred to as a battery—as contrasted with one negligently, recklessly or wantonly inflicted, must be prompted by a 'design to injure, either actually entertained, or to be implied from the conduct and circumstances.' ... Accordingly, an intention merely to do the *act* which causes injury does not satisfy the requirement of intent.

*Shinabarger v. United Aircraft Corp.*, 262 F.Supp. 52, 58 (D.Conn.1966).

Two other cases on point say:

It would require a *tortured* construction of the amended petition to arrive at the conclusion that the plaintiff's cause of action against those defendants was for assault and battery. The gravamen of a civil assault and battery is grounded upon the actor's intention to inflict injury.... In the *Murray* case [*Murray v. Modoc State Bank*, [181 Kan. 642] 313 P.2d 304 (Kansas 1957)], the distinction between assault and battery was clearly stated:

This subject has been thoroughly discussed in the earlier decisions of this court and the law is now clear that the fundamental distinction between assault and battery, on the one hand, and negligence, on the other, is that the former is *intentional* and the latter is unintentional.

*Stricklin v. Parsons Stockyard Co.*, 192 Kan. 360, 388 P.2d 824, 829 (1964) (emphasis added).

Assault and battery is a descendant of the early English common-law action of trespass. Negligence, on the other hand, traces its ancestry back to another ancient common-law writ titled an action of trespass on the case. Originally they were related to each other. The older action of trespass developed new varia-

tions which became separate forms of action. One variety was 'upon a special case' or, later, simply 'trespass on the case.' (Plucknett, A Concise History of the Common Law, 2d ed., pp. 335, 336). Trespass was the remedy for direct injuries and trespass on the case for indirect injuries. These common-law actions have now been abandoned in modern practice, particularly the artificial classification of injuries as direct or indirect. The law today looks instead to the intent of the wrongdoer or to his negligence. In their evolution the action of trespass remained as the remedy for all intentional wrongs and action on the case was extended to include injuries which were not intended but were merely negligently inflicted (Prosser, Law of Torts, 4th ed., § 7, p. 28). Trespass on the case, so Plucknett tells us, had become distinct from trespass by 1390, and as early as the sixteenth century had evolved as the remedy for libel and slander, negligence and deceit (Plucknett, supra, at 336). Battery remains by definition an intentional tort, just as its progenitor trespass. One is subject to liability to another for battery if '(a) he acts intending to cause a harmful or offensive contact with the person of the other ..., and (b) a harmful contact with the person of the other directly or indirectly results' (Restatement of the Law, 2d Torts, § 13). Negligence as the direct descendant of trespass on the case has a different conceptual basis than battery because negligence includes those unintended wrongs which on actor causes to another.

*Dries v. Gregor,* 72 A.D.2d 231, 424 N.Y. S.2d 561 (App.1980).

A case from the federal system which is germane, arose in neighboring Utah:

> This action was brought by personal representatives of a number of persons who were victims of crimes committed by two airmen, Dale S. Pierre and William Andrews, who were assigned to duty at Hill Air Force Base near Ogden, Utah. The case arose under 28 U.S.C. §§ 1346 and 2671 *et seq.* There are five different lawsuits which have been consolidated for trial and for appeal.

> The incidents here occurred on April 22, 1974, when two off-duty airmen entered a privately-owned retail store in Ogden, Utah, and committed a variety of atrocious acts including assaults, rapes, batteries and murders against the plaintiffs and the plaintiffs' decedents. Five persons were shot and three were killed.

> The theory of plaintiffs' cases is that the United States was guilty of actionable negligence in failing to supervise and curtail the two airmen in question in that it was reasonably foreseeable that they would, unless restrained, perpetrate serious injuries. The United States moved to dismiss the actions claiming lack of subject matter jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 2680(h), which excepts the government's waiver of immunity where the liability claim arises from assault and battery.

> ....

> The first question to be considered is whether the above-described deaths and injuries which resulted from batteries and which are presented on the theory of negligence of the government in failing to protect the public from the viciousness of servicemen can be maintained under the Federal Tort Claims Act *notwithstanding that intentional torts are within the immunity retained in § 2680(h).*

> ....

> The [trial] court noted that although the plaintiffs' claims sounded in negligence, they were barred because their true nature and character were intentional torts. Negligence, the court continued, was invoked merely to avoid § 2680(h). The court was reluctant to recognize this negligence theory as a matter of policy because to do so would destroy the effectiveness of 2680(h) where *intentional torts* were committed by employees of the government.

*Naisbitt v. United States,* 611 F.2d 1350, 1351–52 (10th Cir.1980) (emphasis added; footnote omitted). The appellate circuit court provided the trial court's rationale, with which it agreed:

The sole basis for imposing liability on the government is the fact that two government employees committed intentional wrongs against plaintiffs and their decedents. Thus, this is unlike the case in which the government is sued for failure to adequately supervise non-employees. There the sole basis for liability is the negligence of the government officials charged with the duty of supervision. In such a case, negligence is not merely an alternative theory of liability; it is the only basis upon which the government can be held responsible. The intentional wrong cannot itself be the basis of liability because that act was not committed by a government official. Here, in contrast, government liability is possible only because government employees committed the intentional act. Thus, although plaintiffs' complaint is drawn in terms of negligence, the essence of the cause of action is an assault and battery committed by two individuals who were government employees at the time of the wrongful acts. The claim arises *only* because of the *intentional wrong* committed by employees of the sovereign and is, therefore, a claim 'arising out of' an assault and battery and is within the scope of § 2680(h). Plaintiff's negligence theory is, in this case, merely an alternate theory of liability. *Panella v. United States*, 216 F.2d 622 (2d Cir. 1954); *Pennington v. United States*, 406 F.Supp. 850 (E.D.N.Y.1976); *Collins v. United States*, 259 F.Supp. 363 (E.D.Pa. 1966) (Emphasis in original.)

*Naisbitt*, 611 F.2d at 1352–53 (emphasis supplied). Hopefully, the majority will give some consideration to the *Naisbitt* observation that battery, *i.e.*, killing three people, is an intentional civil tort, and that the intent was the intent to inflict serious harm, which is not on a par with Professor Neher's conduct of simply touching, and, *concededly*, with no intent to be harmful or offensive, but rather to be helpful in actuality.

One would also hope that someone in the majority will remember that this Court has observed that our Idaho Tort Claims Act is patterned after the federal tort claims act.

Moreover, the governmental immunity provisions and the exception provisions of the two are identical. But of late, in this business of appellate review, one has learned that if dissents are read, there is usually no response.

An accolade goes out to our now deceased eminent scholar, Justice Shepard, for having brought to my attention the *Naisbitt* opinion in his *Doe v. Durtschi* dissent, which Justice Bakes joined. *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986). Incidentally, but of interest, the Ninth Circuit Court of Appeals, at about the same time as our *Doe v. Durtschi* case, had the *identical* issue in a case appealed from the United States District Court for Arizona, which is in our circuit. The Ninth Circuit reached a conclusion identical to that reached in *Doe* by this Court. *See Bennett v. United States*, 803 F.2d 1502 (9th Cir.1986).

We should not concern ourselves with whether to reject our earlier reasoning in the insurance exclusion cases but rather we should do as other courts have done, namely, decide this case outside of the context of an insurance exclusionary cause.

The Idaho Tort Claims Act, Idaho Code §§ 6–901 and 6–929, establishes the general rule that "[e]xcept as otherwise provided in this act, every governmental entity *is subject to liability* for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course and scope of their employment or duties ... where the governmental entity if a private person or entity would be liable for money damages under the laws of the state of Idaho." I.C. § 6–903(a) (emphasis added). Idaho Code § 6–904(3) creates an *exception* to that liability for a claim which "[a]rises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." It has been held that the Idaho Tort Claims Act created government liability where none heretofore existed, and that the exceptions from liability are limitations thereon. To accept the University's contention

that a battery is committed whenever contact was intended, regardless of whether harm or offense was intended, would be to allow the exception to swallow the rule. Today our only logical and just holding should be that in order to avail itself of the battery exception of Idaho Code § 6–904(3), a governmental entity must prove that the physical contact complained of was made with a harmful intent. *Cf. Farmers Ins. Group v. Sessions,* 100 Idaho 914, 607 P.2d 422, 426 (1980).