Barbara WHITE, as Personal Representative of the Estate of Helen Everly, Deceased, Petitioner,

v.

Sherry Lynn MUNIZ, f/k/a Sherry Lynn Hutchenson, Respondent.

No. 98SC760.

Supreme Court of Colorado,
En Banc.

April 17, 2000.

Patterson, Nuss & Seymour, P.C., Franklin D. Patterson, Gregg E. Kay, Englewood, Colorado Attorneys for Petitioner.

Nick Wimmershoff Longmont, Colorado, Attorney for Respondent.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, Colorado Attorneys for Amicus Curiae The Colorado Trial Lawyers Association.

Knapp & Sachs, P.C., Benjamin Sachs, Debra Knapp, Denver, Colorado; Law Office of Kathleen Mullen, P.C., Kathleen Mullen, Denver, Colorado; The Legal Center For People With Disabilities And Older People, Chester R. Chapman, Claire Williamson, Denver, Colorado; Law Offices of John Robert Holland, P.C., John Robert Holland, Denver, Colorado, Attorneys for Amici Curiae AARP, The Alzheimer's Association (National), The Alzheimer's Association – Rocky Mountain Chapter, The ARC of Colorado, Guardianship Alliance of Colorado, The Legal Center for People with Disabilities and Older People, and National Citizens' Coalition for Nursing Home Reform.

Justice KOURLIS delivered the Opinion of the Court.

Petitioner, Barbara White, as personal representative of the estate of Helen Everly, appeals the decision of the court of appeals in *Muniz v. White*, 979 P.2d 23, 25 (Colo.App.1998), which determined that a mentally incapacitated adult should be held liable for her intentional tort even if she was unable to appreciate the wrongfulness of her actions.[1] We disagree with the court of ap-

1. We granted certiorari to determine: "Whether the element of 'intent' in an intentional tort re-

peals. Rather, we conclude that under the facts present in this case, in order to recover on a theory of intentional tort, the plaintiff, Sherry Lynn Muniz, was required to prove that Everly intended to commit an act and that Everly intended the act to result in a harmful or offensive contact. Accordingly, we reverse the court of appeals, and remand for reinstatement of the jury verdict in favor of the defendant.

## I.

In October of 1993, Barbara White placed her eighty-three year-old grandmother, Helen Everly, in an assisted living facility, the Beatrice Hover Personal Care Center.[2] Within a few days of admission, Everly started exhibiting erratic behavior. She became agitated easily, and occasionally acted aggressively toward others.

On November 21, 1993, the caregiver in charge of Everly's wing asked Sherry Lynn Muniz, a shift supervisor at Hover, to change Everly's adult diaper. The caregiver informed Muniz that Everly was not cooperating in that effort. This did not surprise Muniz because she knew that Everly sometimes acted obstinately. Indeed, initially Everly refused to allow Muniz to change her diaper, but eventually Muniz thought that Everly relented. However, as Muniz reached toward the diaper, Everly struck Muniz on the jaw and ordered her out of the room.

The next day, Dr. Haven Howell, M.D. examined Everly at Longmont United Hospital. Dr. Howell deduced that "she [had] a progressive dementia with characteristic gradual loss of function, loss of higher cortical function including immediate and short term memory, impulse control and judge-ment." She diagnosed Everly with "[p]rimary degenerative dementia of the Alzheimer type, senile onset, with depression."

In November of 1994, Muniz filed suit alleging assault and battery[3] against Everly, and negligence against Barbara and Timothy White.[4] The case proceeded to a jury trial on March 17, 1997.[5] While arguing outside the presence of the jury for specific jury instructions, the parties took differing positions on the mental state required to commit the alleged intentional torts. Muniz requested the following instruction: "A person who has been found incompetent may intend to do an act even if he or she lacked control of reason and acted unreasonably." White tendered a different instruction:

A person intends to make a contact with another person if he or she does an act for the purpose of bringing about such a contact, whether or not he or she also intends that the contact be harmful or offensive. The intent must include some awareness of the natural consequences of intentional acts, and the person must appreciate the consequences of intentional acts, and the person must appreciate the offensiveness or wrongfulness of her acts.

The trial court settled on a slightly modified version of White's instruction. It read:

A person intends to make a contact with another person if she does an act for the purpose of bringing about such a contact, whether or not she also intends that the contact be harmful or offensive.

The fact that a person may suffer from Dementia, Alzheimer type, does not prevent a finding that she acted intentionally. You may find that she acted intentionally if she intended to do what she did, even

quires that the defendant appreciate the offensiveness of her conduct, and whether the court of appeals erred by refusing to apply this court's rule in *Horton v. Reaves*, 186 Colo. 149, 526 P.2d 304 (1974), to a mentally incapacitated adult." Because we received this issue in the context of an assault and battery, we answer this question in regard to those intentional torts only.

2. Everly died on March 18, 1996.

3. For simplicity, we address the issues in this case in terms of the battery claim only. The same principles would apply in the assault context.

4. Muniz originally filed suit in her name at the time, Sherry Lynn Hutcheson. She married on December 9, 1994 and the caption changed accordingly.

5. Prior to trial, the trial court dismissed the negligence claim brought by Muniz against Barbara and Timothy White.

though her reasons and motives were entirely irrational. *However, she must have appreciated the offensiveness of her conduct.*

(Emphasis added.) In selecting the instruction on intent, the trial court determined that Everly's condition rendered her mental state comparable to that of a child.

Muniz's counsel objected to the last sentence of the instruction, claiming that it misstated the law. He argued that the instruction improperly broadened the holding in *Horton v. Reaves*, 186 Colo. 149, 526 P.2d 304 (1974), where the supreme court held that an infant must appreciate the offensiveness or wrongfulness of her conduct to be liable for an intentional tort. The jury rendered verdicts in favor of Everly and White.

The court of appeals reversed the decision of the trial court and remanded the case for a new trial. The court of appeals reasoned that most states continue to hold mentally deficient plaintiffs liable for their intentional acts regardless of their ability to understand the offensiveness of their actions. "[W]here one of two innocent persons must suffer a loss, it should be borne by the one who occasioned it." *Muniz v. White*, 979 P.2d 23, 25 (Colo.App.1998). The court of appeals reasoned that insanity may not be asserted as a defense to an intentional tort, and thus, concluded that the trial court erred in "instructing the jury that Everly must have appreciated the offensiveness of her conduct." *Id.* at 26.

## II.

The question we here address is whether an intentional tort requires some proof that the tortfeasor not only intended to contact another person, but also intended that the contact be harmful or offensive to the other person.

## A.

State courts and legal commentators generally agree that an intentional tort requires some proof that the tortfeasor intended harm or offense. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 8 (5th ed.1984); Dan B. Dobbs, *The Law of Torts* § 30 (2000). According to the Restatement (Second) of Torts,

(1) An actor is subject to liability to another for battery if

(a) he acts *intending to cause a harmful or offensive contact* with the person of the other or a third person, or an imminent apprehension of such a contact, and

(b) an offensive [or harmful] contact with the person of the other directly or indirectly results.

(2) An act which is not done with the intention stated in Subsection (1, a) does not make the actor liable to the other for a mere offensive contact with the other's person although the act involves an unreasonable risk of inflicting it and, therefore, would be negligent or reckless if the risk threatened bodily harm.

Restatement (Second) of Torts § 18 (1965)(emphasis added); *see also Hall v. McBryde*, 919 P.2d 910, 913–14 (Colo.App. 1996); Restatement, *supra*, § 13.

Historically, the intentional tort of battery required a subjective desire on the part of the tortfeasor to inflict a harmful or offensive contact on another. *See* Restatement, *supra*, § 8A; Keeton, *supra*, § 8; 6 Am.Jur.2d *Assault and Battery* § 8 (1999). Thus, it was not enough that a person intentionally contacted another *resulting* in a harmful or offensive contact. *See* Restatement, *supra*, § 18 cmt. e;[6] Keeton § 8. Instead, the actor had to understand that his contact would be harmful or offensive. *See* Keeton, *supra*, § 8; Dobbs, *supra*, § 29. The actor need not have intended, however, the harm that actually resulted from his action. *See* Restatement, *supra*, § 16(1). Thus, if a slight

---

6. According to the Restatement:

[I]t is necessary that an act be done for the purpose of bringing about a harmful or offensive contact ... to another or to a third person or with knowledge that such a result will, to a substantial certainty, be produced by his act.

It is not enough to make an act intentional that the actor realize that it involves any degree of probability of a harmful or offensive contact ..., less than a substantial certainty that it will so result.

Restatement, *supra*, § 18 cmt. e.

punch to the victim resulted in traumatic injuries, the actor would be liable for all the damages resulting from the battery even if he only intended to knock the wind out of the victim. *See id.*

Juries may find it difficult to determine the mental state of an actor, but they may rely on circumstantial evidence in reaching their conclusion. No person can pinpoint the thoughts in the mind of another, but a jury can examine the facts to conclude what another must have been thinking. *See* Keeton, *supra,* § 8. For example, a person of reasonable intelligence knows with substantial certainty that a stone thrown into a crowd will strike someone and result in an offensive or harmful contact to that person. *See id.* Hence, if an actor of average intelligence performs such an act, the jury can determine that the actor had the requisite intent to cause a harmful or offensive contact, even though the actor denies having such thoughts. *See id.*

### B.

More recently, some courts around the nation have abandoned this dual intent requirement in an intentional tort setting, that being an intent to contact and an intent that the contact be harmful or offensive, and have required only that the tortfeasor intend a contact with another that *results* in a harmful or offensive touching. *See Brzoska v. Olson,* 668 A.2d 1355, 1360 (Del.1995) (stating that battery is an intentional, unpermitted contact on another which is harmful or offensive; and that the intent necessary for battery is the intent to contact the person); *White v. University of Idaho,* 118 Idaho 400, 797 P.2d 108, 111 (1990) (determining that battery requires an intent to cause an unpermitted contact, not an intent to make a harmful or offensive contact); *University of Idaho,* 118 Idaho 400, 797 P.2d at 111. Under this view, a victim need only prove that a voluntary movement by the tortfeasor resulted in a contact which a reasonable person would find offensive or to which the victim did not consent. *See University of Idaho,* 118 Idaho 400, 797 P.2d at 111. These courts would find intent in contact to the back of a friend that results in a severe, unexpected injury

even though the actor did not intend the contact to be harmful or offensive. *See id.* 118 Idaho 400, 797 P.2d at 109. The actor thus could be held liable for battery because a reasonable person would find an injury offensive or harmful, irrespective of the intent of the actor to harm or offend.

Courts occasionally have intertwined these two distinct understandings of the requisite intent. *See Brzoska,* 668 A.2d at 1360 (approving the Restatement view of the intent element of a battery, but summarizing the rule as "the intentional, unpermitted contact upon the person of another which *is* harmful or offensive") (emphasis added); Keeton, *supra,* § 8 (noting that applying the element of intent frequently confuses authorities). In most instances when the defendant is a mentally alert adult, this commingling of definitions prejudices neither the plaintiff nor the defendant. However, when evaluating the culpability of particular classes of defendants, such as the very young and the mentally disabled, the intent required by a jurisdiction becomes critical.

In *Horton v. Reaves,* 186 Colo. 149, 526 P.2d 304 (1974), we examined the jury instructions used to determine if a four-year-old boy and a three-year-old boy intentionally battered an infant when they dropped a baby who suffered skull injuries as a result. We held that although a child need not intend the resulting harm, the child must understand that the contact may be harmful in order to be held liable. *See Horton,* 186 Colo. at 155–56, 526 P.2d at 307–08. Our conclusion comported with the Restatement's definition of intent; it did not state a new special rule for children, but applied the general rule to the context of an intentional tort of battery committed by a child. Because a child made the contact, the jury had to examine the objective evidence to determine if the child actors intended their actions to be offensive or harmful. This result complied with both the Colorado jury instruction at the time, and the definition of battery in the Restatement. *See id.*

### C.

In this case, we have the opportunity to examine intent in the context of an injury

inflicted by a mentally deficient, Alzheimer's patient. White seeks an extension of *Horton* to the mentally ill,[7] and Muniz argues that a mere voluntary movement by Everly can constitute the requisite intent. We find that the law of Colorado requires the jury to conclude that the defendant both intended the contact and intended it to be harmful or offensive.

## III.

■ Because Colorado law requires a dual intent, we apply here the Restatement's definition of the term. As a result, we reject the arguments of Muniz and find that the trial court delivered an adequate instruction to the jury.[8]

Operating in accordance with this instruction, the jury had to find that Everly appreciated the offensiveness of her conduct in order to be liable for the intentional tort of battery. It necessarily had to consider her mental capabilities in making such a finding, including her age, infirmity, education, skill, or any other characteristic as to which the jury had evidence. We presume that the jury "looked into the mind of Everly," and reasoned that Everly did not possess the necessary intent to commit an assault or a battery. *See Hall v. Walter*, 969 P.2d 224, 238 (Colo.1998) (stating that the court presumes the jury followed instructions in reaching its verdict).

A jury can, of course, find a mentally deficient person liable for an intentional tort, but in order to do so, the jury must find that the actor intended offensive or harmful consequences. As a result, insanity is not a defense to an intentional tort according to the ordinary use of that term, but is a characteristic, like infancy, that may make it more difficult to prove the intent element of battery. Our decision today does not create a special rule for the elderly, but applies Colorado's intent requirement in the context of a woman suffering the effects of Alzheimer's.

Contrary to Muniz's arguments, policy reasons do not compel a different result. Injured parties consistently have argued that even if the tortfeasor intended no harm or offense, "where one of two innocent persons must suffer a loss, it should be borne by the one who occasioned it." Keeton, *supra*, § 135. Our decision may appear to erode that principle. Yet, our decision does not bar future injured persons from seeking compensation. Victims may still bring intentional tort actions against mentally disabled adults, but to prevail, they must prove all the elements of the alleged tort. Furthermore, because the mentally disabled are held to the reasonable person standard in negligence actions, victims may find relief more easily under a negligence cause of action.[9] *See Johnson v. Lambotte*, 147 Colo. 203, 206, 363 P.2d 165, 166 (1961).

7. Authorities often classify the insane with infants in analyzing tort liability. *See* Keeton, *supra*, § 135. White argues that Alzheimer's patients residing in elder care facilities owe no duty of care to their caretakers because the patients reside there due to their infirmities. She contends that the caregiver assumes some risk of injury when he accepts employment serving such patients who have no capacity to control their conduct. Several jurisdictions have approved of this so-called "fireman's rule" approach. *See Mujica v. Turner*, 582 So.2d 24 (Fla.Dist.Ct.App. 1991); *Anicet v. Gant*, 580 So.2d 273, (Fla.Dist. Ct.App.1991); *Gould v. American Family Mut. Ins. Co.*, 198 Wis.2d 450, 543 N.W.2d 282 (1996). We conclude that an examination of this approach falls beyond the scope of the issue on certiorari. Further, since this case was not tried to the jury on a negligence claim, the duty of care owed by the patient to the caregiver for negligence purposes was not an issue.

8. The actual instruction used by the court in this case is not consistent with our holding today;

however, the error worked in favor of the plaintiff. Since the jury found for the defendant even in the face of the error, the error has no bearing on our decision. The error relates to Instruction 11 and to the first paragraph of Instruction 13, in which there is a suggestion that the conduct need only result in harmful or offensive contact, even without the actor's intent to harm or offend. As we hold today, the actor's intent to harm or offend is an element of the claim. The last paragraph of Instruction 13 cures the error to some extent because the court instructed the jury that the defendant "must have appreciated the offensiveness of her conduct."

9. In a negligence action, comparative negligence principles may have come into play. *See* § 13-21-111, 5 C.R.S. (1999). Because the trial court refused to allow Muniz to bring a negligence claim for procedural reasons, we do not address the negligence issues present here.

## IV.

With regard to the intent element of the intentional torts of assault and battery, we hold that regardless of the characteristics of the alleged tortfeasor, a plaintiff must prove that the actor desired to cause offensive or harmful consequences by his act. The plaintiff need not prove, however, that the actor intended the harm that actually results. Accordingly, we reverse the decision of the court of appeals, and remand the case to that court for reinstatement of the jury verdict in favor of White and consideration of any remaining issues.