Tobin v. Maier Elecs., Inc., et. al., No. 66-2-12 Bncv (Wesley, J., Oct. 25, 2013).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Bennington Unit** | **Docket No. 62-2-12 Bncv** |

| | |
|---|---|
| **Betty Tobin,** **Plaintiff.** **v.** **Maier Electronics, Inc., Siegfried Maier, and Caroline Maier.** **Defendants.** | |

## Opinion & Order
## Denying Plaintiff's Motion in Limine

Plaintiff sues Defendants for a violation of Vermont's Fair Employment Practices Act, Wrongful Termination, Intentional Infliction of Emotional Distress, Assault, and Battery. The claims resulted from Plaintiff's employment with Maier Electronics. Siegfried and Caroline Maier manage Maier Electronics. Plaintiff is represented by Jeremy Dworkin, Esq. Defendants are represented by Joel Iannuzzi, Esq.

Allegedly, Siegfried sexually harassed Plaintiff through unwanted touching and unwanted sexual comments. Caroline knew of the behavior and also accused Plaintiff of having an affair with Siegfried. Maier Electronics terminated Plaintiff's employment shortly after receiving a letter from Plaintiff's attorney.

On August 28, 2013, Plaintiff filed a motion in limine. Plaintiff requested the Court exclude testimony by Defendant's expert that Siegfried suffers from Alzheimer's disease and was unable to appreciate his conduct. Defendant argued the Court should exclude this testimony because mental capacity is not relevant in tort cases. On September 10, 2013, Defendants opposed the motion. Defendants argued mental capacity is relevant to show whether Siegfried was capable of forming an intent to harm. Defendants also argued mental capacity is relevant for consideration as to Plaintiff's claim for punitive damages. On September 19, 2013, Plaintiff responded to Defendants' opposition

The issue is whether testimony about Siegfried's diminished mental capacity is relevant to intentional torts. "Evidence which is not relevant is not admissible." V.R.E. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequences to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401.

According to the Restatement, "[o]ne who has deficient mental capacity is not immune from tort liability solely for that reason." Restatement (Second) of Torts § 895J. Thus, people with diminished capacity may be "liable for their intentional torts, such as assault and battery…" *Id. cmt. b.* On the other hand, mental capacity is relevant to determine if "in the particular

instance any tort has been committed at all." *Id. cmt. c.* Lack of capacity is not itself a defense to a tort but lack of capacity negates an element that a plaintiff must prove. *See id.*

The law in Vermont is most developed for claims of battery. The Vermont Supreme Court briefly addressed the importance of intent in proving a claim for battery. *See Wilson v. Smith*, 144 Vt. 358, 360–61 (Vt. 1984). In *Wilson*, a civil case for assault and battery, the trial court directed a verdict for a defendant because the plaintiff did not show any evidence of intent. *Id.* at 360. The Supreme Court affirmed because it found a plaintiff must allege and prove intent to prevail on claim for battery. *Id.* at 361. *Wilson*, however, does not reach the question of whether proof of battery requires not only intent to engage in the wrongful conduct that causes injury, but also an appreciation of the likelihood that the injury would result. *See id.*

A split in authority exists among the states on the nature of the intent required to commit battery. *See White v. Muniz*, 999 P.2d 814, 816–18 (Colo. 2000). The traditional view is that an actor must not only intend the conduct but also must have some appreciation that the conduct is likely to be offensive or harmful. *Id.* at 816–17. Some courts take a more limited view: the only intent required is the intent to cause the contact. *See id.* at 817; *see also Brzoska v. Olson*, 668 A.2d 1355, 1360 (Del. 1995) ("The intent necessary for battery is the intent to make contact with the person, not the intent to cause harm.").

Again, the Restatement provides evolutionary guidance on what is required to prove battery.

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

Restatement (Second) of Torts § 13; *see also Christman v. Davis*, 2005 VT 119, ¶ 6, 179 Vt. 99 (adopting the Restatement).[1] The comments further explain: "an act is done with the intention described in this Section, it is immaterial that the actor is not inspired by any personal hostility to the other, or a desire to injure him." *Id. cmt. c.*

The most recent version of the Restatement makes further refinements: "A person acts with the intent to produce a consequence if: (a) the person acts with the purpose of producing that consequence; or (b) the person acts knowing that the consequence is substantially certain to result." Restatement (Third) of Torts: Phys. & Emot. Harm § 1. "In general, the intent required in order to show that the defendant's conduct is an intentional tort is the intent to bring about harm (more precisely, to bring about the type of harm to an interest that the particular tort seeks to protect)." Restatement (Third) of Torts: Phys. & Emot. Harm § 1 *cmt. b.*; *compare* Restatement (Second) of Torts § 8A ("The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.").

---

[1] In *Christman*, the Vermont Supreme Court relied on the Restatement (Second)'s formulation for battery in the context of a medical malpractice claim in which it was alleged that the physician performed an operation for which there was no consent. The ruling provides no illumination as to the issues raised by Plaintiff's motion in limine.

While acknowledging the Restatement in *Christman*, the Vermont Supreme Court has not commented on the refinements, or arguable contradictions, between Restatement (Second) and Restatement (Third) on the issue of the nature of the intent required to prove an intentional tort. Given the absence of such explicit guidance, this Court finds the Colorado Supreme Court's thorough discussion in *White* particularly helpful in understanding how the Restatement applies. *See* 999 P.2d at 814–15. The defendant was a patient at a nursing home who suffered from Alzheimer's disease. *Id.* at 815. While the plaintiff sought to change the defendant's diaper, the defendant stuck the plaintiff. *Id.* The Colorado Supreme Court discussed the level of intent required to prove battery. *See id.* at 816–18. Under the Restatement and Colorado law, the plaintiff must prove both that the defendant intended to cause the contact and appreciated the contact was likely to be offensive or harmful. *See id.* at 818. Further, the court reasoned the mental deficiency of a defendant can be relevant to show whether the defendant appreciated the consequences of the defendant's actions. *See id.* The court concluded:

> A jury can, of course, find a mentally deficient person liable for an intentional tort, but in order to do so, the jury must find that the actor intended offensive or harmful consequences. As a result, insanity is not a defense to an intentional tort according to the ordinary use of that term, but is a characteristic, like infancy, that may make it more difficult to prove the intent element of battery.

*Id.*

This Court finds the reasoning of the Colorado Supreme Court persuasive. As in *White*, our case involves allegedly offensive touching by a defendant who claims to have been suffering from cognitive impairment. *See id.* at 815. The Vermont Supreme Court has emphasized a plaintiff must prove all elements of battery, including intent. *See Wilson*, 144 Vt. at 360. Further, Vermont seems likely to follow the Restatement on the level of intent required to prove battery. *See Christman*, 2005 VT 119, ¶ 6. Under the reasoning of *White*, the Restatement requires plaintiff prove not only intentional contact but also an appreciation for the offensiveness of the contact. *See* 999 P.2d at 818. Additionally, this Court's reading of the Restatement and its comments suggest that a person must be able to appreciate the likely consequences of contact. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 1 *cmt. b.*; *White*, 999 P.2d at 818; *Wilson*, 144 Vt. at 360 (requiring proof of intent).

Taking the reasoning a step further, evidence of mental deficiency may be relevant to show a defendant did not appreciate the consequences of the defendant's actions. Again, *White* is persuasive. Mental deficiency is not itself a defense to an intentional tort. *See White*, 999 P.2d at 818. A defendant may raise mental deficiency as a characteristic that makes it more difficult for a plaintiff to prove the intent and appreciation of the defendant. *Id.* The reasoning in *White* is consistent with the Restatement in that the deficiency is not itself a defense but can still be relevant. *See id.*; Restatement (Second) of Torts § 895J. Furthermore, this reasoning applies to all intentional torts and not only to battery. Therefore, the Court concludes evidence of Defendant's mental impairment is relevant to this case. *See* V.R.E. 401.

Plaintiff insists that *White* is inconsistent with settled precedent in Vermont. See *Shedrick v. Lathrop*, 106 Vt. 311 (1934). The Court disagrees. *Shedrick* involved a tort action "for the

alienation of the affection of plaintiff's wife by adultery." *Id.* at 313–14. The defendant offered insanity as a defense. *Id.* at 314. The court ruled: "Insanity of the defendant is no defense to the award of compensatory damages. An insane person is liable in damages for his torts." *Id.* at 317 (citing *Morse v. Crawford*, 17 Vt. 499 (1845)). The Court also held the jury could consider insanity on a claim for exemplary damages. *Id.* 317–18.

*Shedrick* does not control the outcome here. First, this Court's ruling is not that insanity is a complete defense to battery or any other intentional tort, but rather that it is relevant to whether a defendant had the required intent to commit such tort. *See White*, 999 P.2d at 818; *Wilson*, 144 Vt. at 360. Second, *Shedrick* involved circumstances distinctly distinguishable from those here. *Shedrick* involved a claim for alienation of affections, a tort that no longer exists in Vermont. *See id.* 106 Vt. at 313–14; 15 V.S.A.§ 1001. Although insanity may not have been a defense to alienation of affections stemming from adultery, the ruling in *Shedrick* sheds no light on the relationship between proof of a mental defect and whether a defendant intended to commit battery and other intentional torts. Finally, the reasoning of *Shedrick* is extremely limited, notably omitting any discussion of whether the then tort of alienation of affections required proof of any particular intent. *See id.* 317–18. *Shedrick* merely states a rule applicable to a case with facts that differ dramatically from facts of this case. *Id.*

*Morse* is distinguishable for similar reasons. *See* 17 Vt. at 499. In *Morse*, the defendant killed an ox that belonged to the plaintiff. *Id.* The defendant claimed he was insane and sought a jury instruction that insanity was a defense. *Id.* at 499–500. The trial court instructed the jury that if the defendant killed the ox during a lucid interval then he was liable to plaintiff. *Id.* at 500. The jury found for plaintiff. *Id.* The Supreme Court upheld the verdict, while noting that insanity is not a defense in tort law. *Id.* at 502–503. Again, this Court does not quarrel with the principle that insanity affords no complete defense to a tort claim. Nonetheless, mental deficiency is still relevant to whether the plaintiff can prove the required intent associated with the particular tort alleged.

Plaintiff further argues this Court should not find the reasoning of *White* persuasive because it concerned a special case—a suit by caregiver for a person with a mental deficiency. *See* 999 P.2d at 815. The Colorado Supreme Court addressed this issue in a footnote and declined to rely on any assumption of the risk in coming to its conclusion. *See id.* 818 fn. 7. Plaintiff also cites the Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 11 to show Plaintiff's interpretation conforms with the modern view of mental impairment in tort law. Yet, that section falls under the Restatement's discussion of negligence. Plaintiff makes claims for intentional torts, thus this Court need not address the role of mental impairment as it bears on a negligence action.[2]

---

[2] The Court reaches none of the arguments relating to insurance cases. As the parties observe, the Vermont Supreme Court has ruled on the relevance of mental capacity in insurance cases. See *Coop. Fire Ins. Ass'n v. Combs*, 162 Vt. 443, 448 (1994). *Combs* relied on presumptions that do not necessarily apply outside of the insurance context. See id. at 445–46. Additionally, in another insurance case, the Vermont Supreme Court refused to consider the relevance of diminished mental capacity of the perpetrator in a sexual harassment case , but that was because it found no evidence of diminished capacity. See *Allstate Ins. Co. v. Vose*, 2004 VT 121, ¶ 20, 177 Vt. 412.

Finally, Plaintiff insists in a footnote that it is unlikely the evidence presented by Defendants would survive a *Daubert* review. *See* V.R.E. 702; *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993); *see also State v. Brooks*, 162 Vt. 26, 30 (1993) (adopting *Daubert* as the standard for reviewing expert testimony). This approach is inadequate to the presentation of a *Daubert* challenge in connection with the current motion in limine.

## Order

For the reasons discussed in this opinion, the Court **DENIES** Defendant's Motion in Limine.

Dated at Bennington, Vermont on October 25, 2013

John P. Wesley
Superior Court Judge